**David BOGART, Plaintiff,**

v.

**UNIFIED SCHOOL DISTRICT NO. 298 OF LINCOLN COUNTY, KANSAS, et al., Defendants.**

Civ. A. No. 74–178–C6.

United States District Court,
D. Kansas.

May 17, 1977.

Jim L. Lawing, Wichita, Kan., Philip R. Herzig, Salina, Kan., for plaintiff.

Daniel C. Bachmann, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This action arises under 42 U.S.C. § 1983, and the same was tried to the Court on February 17, 1977. Pursuant to such trial the Court has made certain Findings of Fact, as set out below:

1. For seven years prior to the 1973–1974 school year plaintiff Bogart taught high school industrial arts, plus an occasional chemistry class for Unified School District No. 298 (hereinafter referred to as "USD 298"). During this time plaintiff's teaching performance was evaluated by the North Central Association and Kansas

State Department of Education, and by the high school principal under whom plaintiff worked for six years. Both evaluations found Bogart to be a well-qualified instructor with excellent student rapport.

2. On July 29, 1973, plaintiff's son was arrested for drug violations, a search warrant was issued by the state against the home of plaintiff and his son, and certain incidents occurred which culminated in a charge of possession of marijuana being lodged against plaintiff by the County Attorney of Lincoln County, Kansas, on August 3, 1973.

3. On August 6, 1973, the Board of USD 298 held its regularly scheduled meeting. Minutes of the meeting disclosed "after a lengthy discussion period, Frank Wallace made a motion that David Bogart be suspended from his status as an active member of the faculty of USD 298 pending the determination of the action filed against him in the Lincoln County Court. The State of Kansas is plaintiff and David Bogart is defendant, which cause is set for trial on August 21, 1973. Motion was seconded by Jay Cromwell and carried unanimously."

4. On August 8, 1973, plaintiff was informed by letter that at a meeting of the Board of USD 298 on August 6, 1973, "it was voted by the board that you be immediately suspended from duty as an instructor in the district pending a decision of the board as to whether you should be discharged and your contract for the 1973–74 academic year cancelled because of conduct unbecoming an instructor." Plaintiff was not informed of the specific conduct for which the Board was considering his dismissal. He was told he could request a hearing at which he could be represented by counsel, present evidence, and call and examine witnesses.

5. By letter dated August 15, 1973, plaintiff, by his counsel, requested a hearing before members of the Board of USD 298.

6. On August 17, 1973, plaintiff and his counsel received notice of a hearing before the Board of USD 298 as to plaintiff's suspension, which hearing was scheduled for August 21, 1973.

7. At the hearing of August 21, 1973, plaintiff was present with his attorney, his son Scott, and his married daughter Becky Cole. Although plaintiff had not yet been informed by the Board as to the specific acts of misconduct of which he was accused, he was told by the Board's attorney during the hearing that the School Board had suspended plaintiff because of the criminal charge placed against him.

8. Plaintiff informed the Board of the events of July 29, 1973, as follows:

On the afternoon of Sunday, July 29, plaintiff had several guests at his home when his son, Scott, called from the Sheriff's office and told plaintiff he had just been arrested on a drug charge and the Sheriff had a search warrant for the house. Plaintiff asked his son if there was anything in the house and Scott answered, "Yes." Plaintiff said, "Where in the world is it?" Scott answered it was up in his room in a plastic bag in a paper sack and there was another sack or bag by the chair. This was the first plaintiff knew of such marijuana being in his home.

Bogart further stated his first thought was to protect his son. He went up to Scott's room, found the little plastic bag and threw it out the back door into the back yard. He then drove to the Sheriff's office in Lincoln. A short time later plaintiff, in his car, followed his son and the Sheriff back to plaintiff's home. The Sheriff told plaintiff, upon his query, that it wouldn't make any difference if he got the marijuana or not, but it would be the right thing to do to turn the marijuana over to him. Scott started to go into the house to get the marijuana and plaintiff told him it wasn't there. Plaintiff then picked up the marijuana in the back yard and gave it to the Sheriff.

Plaintiff further informed the Board he had discovered his son at home with a marijuana cigarette about a year before and they had had "quite a set to." He had believed from that time until this

incident that Scott had quit using marijuana. Plaintiff stated he had considered trying to take the blame himself for the marijuana in order to protect his son, but had rejected the idea.

In response to questions by the Board's attorney, plaintiff told the Board he believed, and may have told the Sheriff or County Attorney, that adult habits of drinking beer and smoking cigarettes are probably as bad as smoking marijuana. He also stated his biggest contention against marijuana, which he had discussed with Scott, was that "although it may not be harmful in itself, it could lead to stronger drugs."

Plaintiff told the Board he did not believe his effectiveness as a teacher was impaired by the charges against him because the kids knew he did not smoke pot nor advocate its use. Plaintiff further stated he believed he would be completely exonerated of the criminal charge and had done nothing which could be construed as conduct unbecoming a teacher.

9. Minutes of the August 21, 1973, meeting of the Board of USD 298 state in part:

"This meeting was called at the request of David Bogart, recently suspended from contract for the 1973–74 school year pending final decision on action filed in Lincoln County Court with State of Kansas as plaintiff and David Bogart as defendant.

"Following the questioning Mr. Bogart made a statement to the board that he was not guilty of any charges filed against him and that he didn't believe the pending court hearing could have any affect (sic) on his teaching or relationship with the students and that the suspension be dropped and he be allowed to fulfill his contract.

"Frank Cole ask (sic) that he be excused from presiding over the meeting. Although he would try he felt it would be hard for him to be objective with the family involvement. Mr. Cole was excused and left the meeting room.

"After a lengthy discussion period Jay Cromwell made a motion that the suspension of David Bogart as a teacher in Lincoln High School be continued until after his trial in Lincoln County District Court at which time a final decision of the board will be made. Motion was seconded by Bob Hamilton and carried unanimously with the six board members all voting yea."

10. By letter dated August 22, 1973, plaintiff was informed that "it was the decision of the board to continue the suspension until after the trial in Lincoln County District Court at which time a final decision of the board will be made."

11. By letter dated September 6, 1973, plaintiff, by his attorney, informed the Board that his case could not be tried in District Court until December 14, 1973, and again demanded immediate reinstatement.

12. On September 11, 1973, in a special meeting held without notice to plaintiff, the Board unanimously voted to reinstate Bogart pending trial.

13. On December 14, 1973, plaintiff testified at his trial on the charge of possession of marijuana. His testimony was essentially the same as that given before the Board on August 21, 1973, although he went into greater detail at the trial. Details given by plaintiff at his criminal trial which were not stated earlier before the Board were:

Plaintiff told the Court he had company at his house the afternoon his son called. His daughter answered the phone and called plaintiff to the phone whereupon Scott told his father of his arrest, the search warrant, and the marijuana in the house. Upon hanging up the telephone, plaintiff went upstairs, found the marijuana, and "took it out into the back yard and put it behind a tree."

Plaintiff also stated that he was concerned both about having people search in his house while his friends were there, and about protecting his son when he initially removed the marijuana from the house.

14. Sheriff Panzer, who testified against plaintiff at the December 14, 1973, trial, related essentially the same facts and con-

versations as those to which plaintiff testified both at trial and at the August 21 Board meeting.

15. On December 14, 1973, at the conclusion of the evidence, the jury found plaintiff Bogart guilty of possession of marijuana.

16. On January 7, 1974, the regular meeting of the Board of USD 298 was held without notice to plaintiff that his dismissal was a topic to be considered. The minutes reflect:

"After a lengthy discussion on the trial of David Bogart in which he was found guilty of the possession of marijuana by a jury of twelve, Jay Cromwell made a motion that David Bogart be dismissed from his contract on the basis of conduct unbecoming a teacher."

All members voted "yes" excepting Frank Cole, who abstained.

17. By letter dated January 8, 1974, plaintiff was informed that the Board had voted to terminate his contract effective January 11, 1974, "for conduct unbecoming an instructor, which conduct resulted in your conviction in the Lincoln County District Court of the offense of possession of marijuana."

18. By letter dated January 10, 1974, plaintiff, through his attorney, informed the Board of his pending Motion for New Trial and Motion to Set Aside the Verdict of the Jury. He also stated his intent to appeal his case to the Kansas Supreme Court if necessary. The letter said should Bogart be exonerated in the matter, he expected to return to his teaching duties and be compensated as provided in his contract.

19. On January 17, 1974, the Board called a special meeting for the purpose of allowing a representative group of Lincoln High School parents and students to question the Board concerning plaintiff's dismissal. The meeting was by invitation only and lasted two and one-half hours.

20. On February 4, 1974, District Judge Brummet, who presided over plaintiff's state trial, rendered a judgment of acquittal notwithstanding the verdict, stating the Court found nothing in the case that would attach even by inference that Bogart exercised possession of marijuana sufficient to maintain a conviction. This fact was reported on the first page of The Salina Journal, a local newspaper of general circulation, for Monday, February 4th. It appears from a newspaper interview printed Tuesday, February 5, 1974, in The Salina Journal, that Superintendent Mettner and Frank Cole, Chairman of the School Board, knew of the acquittal at least by that date.

21. On February 7, 1974, plaintiff, by way of a letter from his counsel to USD 298, advised the officials of USD 298 that plaintiff "had been exonerated completely of the charge against him of possession of marijuana."

22. By letter dated February 11, 1974, plaintiff was advised by USD 298 his demand for reinstatement would be on the agenda at the next regular meeting of the Board.

23. Minutes of the March 4, 1974 meeting of USD 298 disclose:

"A letter from Phillip Herzig, attorney for David Bogart, was presented to the board. Mr. Herzig demands reinstatement for Mr. Bogart, at once.

"Frank Cole made a recommendation to the board that Mr. Bogart be reinstated immediately and the balance paid on the 1973–74 contract.

"Jay Cromwell made a motion that no change in the action taken by the board be considered and that Mr. Herzig be so informed. Motion died from lack of a second.

"After a discussion period Frank Wallace made a motion to have Board Attorney Richard Wahl talk to Mr. Herzig and come to a complete settlement on Mr. Bogart, with a signed release for the board. Motion was seconded by Eugene Schott and carried with one nay vote."

At the same meeting the Board considered and voted upon approval of 1974–75 teachers' contracts.

24. Plaintiff was not informed of the Board's decision not to reinstate him until March 28, 1974, when the Board's attorney, in response to inquiry, so informed plaintiff's attorney by letter. No mention of settlement was made in such letter.

25. Plaintiff was never provided with a statement of reasons for his discharge other than that the conduct complained of was that which resulted in his December 14th conviction. After notice within a reasonable time of plaintiff's request for reinstatement that such conviction had been reversed for lack of any evidence leading to even an inference of guilt, the Board neither changed its administrative action nor notified plaintiff of any other basis for his discharge. Plaintiff was never offered an opportunity for hearing upon any basis for discharge other than the criminal charge which had been lodged against him.

26. At pre-trial conference upon this matter, defendants stated plaintiff was discharged for the following reasons: Material variations in the testimony by the plaintiff under oath before the Board and his testimony at his trial; his expressed positions on the use of marijuana; his prior problems within the school system; his stated willingness to commit crimes violative of the laws of the State of Kansas; and his stated disregard of the law. Defendants also advanced the position that Judge Brummet's judgment of acquittal is invalid, although no appeal was ever taken from such ruling. The Court finds such ruling not only valid legally, but entirely supported by the evidence before the Court. Prior to pre-trial of this action, plaintiff was never informed these were the charges upon which he was dismissed, nor was he ever given an opportunity to controvert such accusations in a hearing before the Board.

27. There were no material variations in the testimony given by the plaintiff under oath before the Board and that given by him under oath at his trial for possession of marijuana.

28. There was no mention at the hearing of August 21st, nor in any other Board meeting dealing with plaintiff's dismissal, of any prior problems of plaintiff within the school system. The Court finds further that two major prior reports upon plaintiff's conduct as a teacher, written by his principal of six years, Mr. Klunn, rate plaintiff as outstanding. Such reports have somehow disappeared from plaintiff's personnel file in the school administration's custody, and could not be produced at trial. The only document submitted reflecting even minor criticism of plaintiff's conduct as a teacher was prepared at the request of the Board's attorney subsequent to the Board's decision to suspend plaintiff.

29. Plaintiff's "stated willingness to commit crimes violative of the laws of the State of Kansas," consists merely of a father's honest account, upon request, of his mental conflict as to whether to obey the dictates of the law or attempt to protect his son, which thought process occurred shortly prior to his decision to obey the law. At all times in this matter, the Board was aware plaintiff produced the marijuana immediately upon the Sheriff's arrival at his home. The defendants, at trial, further advanced the novel and belated argument that plaintiff had committed the criminal offenses of obstruction of justice and aiding and abetting a felon. Again, the Court has heard absolutely no evidence to support such conclusionary allegations, and rejected defendants' efforts to plead plaintiff guilty to such conjured offenses during the trial.

30. After his dismissal by defendant School Board, plaintiff attempted to obtain employment as an instructor in every school district within a reasonable distance from the farm where he resides, and was unable to do so despite his outstanding record for character and teaching excellence prior to 1974.

31. After his dismissal by the Board, and up until the present, plaintiff has engaged in some farming activities upon the land where he resides. Such activities, however, are part-time endeavors he would normally expect to perform after school hours and during vacations, and do not mitigate the damage he suffered from loss of teaching wages.

32. Back pay plaintiff would have accrued had he not been dismissed from his contract for the last half of the year 1973–1974, is $4,695.00. Back pay for the subsequent years in which plaintiff's contract would have been automatically renewed under Kansas' "continuing Contract Law" absent removal for cause after a proper hearing is as follows:

| | |
|---|---|
| 1974–1975 | $ 9,790.00 |
| 1975–1976 | 10,340.00 |
| 1976–1977 | 11,154.00 |
| | $31,284.00 |

33. Prior to his dismissal by USD 298, and in conjunction with his teaching contract, plaintiff was employed by such school district as a school bus driver during the school year at $100.00 per month. He was dismissed by the School Board from this position as well as from his teaching contract. Plaintiff would have earned the sum of $500.00 if he had been allowed to continue driving the school bus the remainder of the 1973–1974 school year.

34. Defendant Mettner, as Superintendent of Schools, was present at all Board meetings herein discussed, but was unable to vote upon Board decisions.

Plaintiff alleges in this action for reinstatement and damages that defendants, by their actions, deprived him of property and liberty interests arbitrarily, capriciously, and without due process of law. This Court concurs. Plaintiff was a high school industrial arts instructor for defendant School District for seven years prior to the 1973–1974 school year. Defendants Cole, Hamilton, Schott, Douglass, Cromwell, Sheldon, and Wallace, were members of the Board of Education of Unified School District No. 298 of Lincoln County, Kansas, during the relevant period. Defendant Mettner was Superintendent of such school district.

Prior to commencement of the 1973–1974 school year, but after signing a contract with plaintiff for such year, defendant school board notified plaintiff that he had been suspended from his teaching duties and he had the right to request a hearing before the Board voted upon his dismissal for conduct unbecoming a teacher. A hearing was held before the Board at which plaintiff appeared represented by counsel, answered questions, and presented a witness in his own behalf. Decision upon the matter of plaintiff's dismissal was then delayed until after a state court trial connected with the charges for which plaintiff had been suspended. Such trial was held December 14, 1973, and the jury found plaintiff guilty of possession of marijuana. On January 7, 1974, the Board voted to dismiss plaintiff for conduct unbecoming a teacher. On February 4, 1974, the District Judge presiding over plaintiff's trial set aside the verdict, and acquitted plaintiff, as a matter of law, stating there was no evidence presented at trial to raise even an inference of guilt. Although hearing of this ruling within a few days, the Board has refused to reinstate plaintiff. Other relevant facts surrounding this controversy are more fully set out in the Court's Findings of Fact.

The first determination to be made in this § 1983 action is whether plaintiff had such a legally cognizable property or liberty interest as to have standing to complain of the manner of its deprivation. "A property interest in employment can, of course, be created by ordinance or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684 (1976).

At the time this cause of action arose, Kansas had no statute allowing tenure for teachers such as plaintiff who taught in cities of less than 120,000 population. The present act providing procedural guidelines for a due process hearing on termination of a teacher's contract was first passed in 1974. See K.S.A.1976 Supp. 72–5436, et seq. It is useful for the Court's consideration in light of defendants' action in this case, however, to note statutory causes for discharge of teachers in cities of over 120,000 were "immoral character, conduct unbecoming an instructor, insubordination, failure to obey reasonable rules promulgated by the board of education, inefficiency, incompetency, physical unfitness or failure to

comply with reasonable requirements of the board of education as may be prescribed to show normal improvement and evidence of professional training." Instructors also may be dismissed because of decrease in number of pupils or for other causes over which the board of education has no control. K.S.A. 72–5406 (repealed effective July 1, 1974).

Kansas does have, and did have at the time in question, a "continuing contract law" applicable to teachers' contracts, as follows:

"All contracts of employment of teachers in the public schools in the state, shall continue in full force and effect during good behavior and efficient and competent service rendered by the teacher, and all such contracts of employment shall be deemed to continue for the next succeeding school year unless written notice of intention to terminate the contract be served by the governing body upon any such teacher on or before the fifteenth day of March . . . ." K.S.A. 72–5411.

*Wertz v. Southern Cloud Unified School District*, 218 Kan. 25, 542 P.2d 339 (1975), states:

"In the absence of written notice by the school board to terminate a teacher's contract on or before March 15, the contract continues for the next succeeding school year."

■ Plaintiff herein was dismissed mid-year while under contract with defendant. Kansas law holds "the property interest in a teacher's contract obligates the government agency (school board) to grant the teacher notice of a proposed dismissal and a hearing at which he can be fully informed of the reasons for dismissal and challenge their sufficiency." *Wertz*, supra, at page 30, 542 P.2d at page 344, and cases cited therein. See also, *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Furthermore, Kansas' "continuing contract law" indicates that "the Kansas legislature, as a matter of public policy, recognized a valuable interest by a public school teacher in the expectancy of contin-

ued employment. . . . The very purpose of tenure and continuing contract laws is to give recognition to a constitutionally protectible interest." *Endicott v. Van Petten*, 330 F.Supp. 878, 882 (D.Kan.1971). Therefore, at the time of plaintiff's dismissal, Kansas law provided a teacher with a property right not only in his current contract but also in future "continuing" contracts.

■ The Court further finds plaintiff in this instance had a viable liberty interest which was impaired by defendant's actions. After his dismissal by defendant school board, plaintiff attempted to obtain employment as an instructor at every school district within a reasonable distance, and was unable to do so despite his outstanding record as a shop instructor. As stated in *Wertz*, supra, 218 Kan. at page 29, 542 P.2d at page 344:

"The stigma which attaches to a mid-year dismissal of a non-tenured teacher for . . . [conduct unbecoming an instructor] is sufficiently injurious as to call for a hearing and, even though a hearing is not accorded such teacher by state statute, constitutional requirements of due process operate to overcome the lack of statutory rule."

This is not a case wherein the Board's decision or the alleged bases therefor was communicated to the petitioner in private. See *Bishop v. Wood*, supra, 96 S.Ct. at 2079. Here, the Board went so far as to hold a special meeting with representative students and parents who were protesting plaintiff's dismissal to explain to them the reasons for the Board's action. Charges alleged against plaintiff were thus made publicly and, it is reasonable to find, seriously damaged his good name, standing and associations in his community. Dismissal on such grounds as were alleged and in such a public manner demonstrably had serious effect on plaintiff's liberty to obtain other employment in the nearby area.

■ Due process requires the hearing to which plaintiff is entitled, be before an impartial tribunal. There are at least two component factors which must be con-

sidered in determining impartiality. First, the individual decision makers must not have exhibited bias as to the factual questions to be decided at hearing; and second, the hearing must occur before dismissal except in unusual circumstances not found in this case. As to the first requirement, evidence of actual bias which offends due process consists of "statements on the merits by those who must make factual determinations on contested fact issues . . . where the fact finding is critical." *Staton v. Mayes*, 552 F.2d 908, at page 914 (10th Cir. 1977). It is not actual bias to have made statements as to policy issues related to the dispute, nor to have stated the charges in instigating an investigation of such. Although questions asked plaintiff by the Board's attorney at the August 21, 1973 hearing indicated prior acquaintance by some members with facts and rumors having to do with plaintiff's arrest, it does not clearly appear that such members had already decided as to the veracity of such rumors.

■ The second requirement, that the hearing be prior to dismissal, is to insure fairness in the representation of competing interests prior to a decision. As stated in *Wertz*, supra, 218 Kan. at page 32, 542 P.2d at page 346:

"The individual who is the object of the proposed governmental action should not have to bear the handicap of overcoming the inertia of the status quo; he should not bear the burden of persuading the decision maker to reverse a fait accompli unless the proponent of the action can show specific, valid and appropriate reasons for precipitous, prehearing action. *Wagner v. Little Rock School District*, 373 F.Supp. 876, 882 (E.D.Ark.1973)."

Although plaintiff was suspended prior to his August 21st hearing, such suspension was with pay and was removed several months before the Board's decision. It does not appear at the August 21st hearing the Board was so biased as to violate plaintiff's due process rights. This is not determinative of the issue, however, in that after the August 21st hearing the matter was continued until trial.

Upon trial, at which essentially the same facts were proved as plaintiff had testified to before the Board, the plaintiff was found guilty, and immediately thereafter dismissed by the Board. It is obvious the determining factor in the Board's decision was the jury's verdict, in that no other relevant new information was provided it by the trial. Less than a month later, however, sufficiently before the March 15th date when teachers must be rehired or new teachers sought, the Board was put on notice that a finding of guilt of possession of marijuana upon the facts before it must necessarily be completely erroneous, arbitrary and capricious. Upon plaintiff's insistence, the Board held a new hearing but did not notify plaintiff. At such hearing the members recognized they could not rest upon their prior decision as the only basis for such had been invalidated, nevertheless they voted not to reinstate plaintiff but to attempt settlement with him. Such action clearly indicates the "inertia of the status quo" was a primary basis for the Board's decision of March 4, 1974. No other reasons were advanced and no new hearing was offered plaintiff upon subsequent allegations. Clearly, on March 4, 1974, the Board was not the impartial tribunal required by due process.

■ Due process requires the decision maker to set forth findings at the time of its decision, which state clearly the reasons for its determination and the evidentiary basis relied upon. Conclusory terms such as "conduct unbecoming an instructor" are not sufficient. *Staton v. Mayes*, supra at 915–916, citing *Goldberg v. Kelly*, 397 U.S. 254, 271, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). "Such rudimentary statements of reasons are a safeguard against a decision on ex parte evidence." Id. Obviously no such statement was provided plaintiff in this matter. It is equally clear (after several years' litigation and this trial in federal court) the ultimate decision by defendants in this case was made upon just such ex parte evidence the rule is designed to prevent, and for reasons never revealed to

plaintiff before this lawsuit, upon which he was never given an opportunity for hearing, which are not rationally supported even by the ex parte evidence and which exhibit an insidious infringement upon plaintiff's right to thought and speech under the First Amendment.

The reasons now advanced by defendants as bases for their decision to discharge plaintiff are set out in the findings of fact. Obviously the Court need not consider whether these charges have any support in the evidence, in that plaintiff was never granted any element of due process as to them. The Board's dismissal of plaintiff is invalid purely upon due process grounds. Nevertheless, the factual bases relied upon by defendants in support of their rationale for dismissal have been argued to the Court, and the constitutional implications raised by defendants' reasons compel the Court's consideration. Furthermore, the Court believes any hearing granted plaintiff at this time upon defendants' belated accusations would necessarily violate plaintiff's right to be heard before discharge.

■ As set out in the findings of fact, there is no factual justification for defendants' allegations of perjury against plaintiff, nor for a finding of any substantial prior problems within the school system. These and other charges leveled against plaintiff are completely spurious in substance and were made in an attempt to validate an obviously invalid administrative action. The other accusations made against plaintiff reflect the Board's real reason for wishing to discharge plaintiff, which originated in his responses to the Board's questions as to his thoughts upon the dangers of marijuana in general, and as to his mental reactions upon news of his son's arrest. Upon request, plaintiff told the Board his views as to the minimal dangers of marijuana use, based upon his studies of the question. Plaintiff also told the Board of his mental conflict between protecting his son and obeying the law at the time of his son's arrest. There was no evidence of plaintiff's ever espousing use of marijuana to his students and, in fact, just the opposite was shown; nor was there a willingness to do so as expressed in either speech or action in the community or before his students. Therefore, the only provable facts upon which defendants can finally defend plaintiff's dismissal must be plaintiff's thoughts and opinions as explained to them upon their request at hearing. These are not lawful bases for dismissal.

■ It is fortunate the State is not allowed to penalize its citizens for their thoughts, for it would be the rare and either mindless, supine, or super-saintly citizen who has not at some time contemplated and then rejected the illegal, the unjust, the self-serving or the vulgar. Furthermore, our First Amendment is based upon the theory that by contemplating, even discussing such ideas, the merit of obeying the laws will be more clearly apparent, and those laws which do not withstand such scrutiny may be changed. As stated in *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972):

> "[A state] may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited."

Due process requirements attempt to guarantee the State will not accomplish through secrecy and subterfuge that which the First Amendment forbids being done directly. The ideal is that such job security in the academic community will "inspire our educators to exercise their 'academic freedoms' and prevent the academic community from stagnating as a result of being subject to termination for expressing unorthodox views, thoughts contra to existing provincialism, or for no reason whatsoever." *Endicott v. Van Petten,* supra, at 885.

■ In sum, procedural due process requires at least notice, a hearing, and a method of decision which does not offend the concept of fundamental fairness. The extent and nature of the hearing may vary

from situation to situation, depending upon all of the facts and circumstances. Substantive due process requires the decision-maker to be presented with and to consider a minimal amount of credible evidence sufficient to support a legal basis for its ultimate action. Again, what constitutes sufficient evidence may vary from situation to situation, although it need be only enough to prevent the decision from being totally arbitrary and capricious in the case of. administrative action. Here, both types of legal due process were seriously affronted.

The Court finds the action of the defendants in this case to have been so factually baseless as to amount to wanton, oppressive and bad faith conduct. Such conduct warrants and is legal basis for allowance of attorney's fees to plaintiff under the traditional rule. *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). See also *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Furthermore, 42 U.S.C. § 1988, as amended effective October 19, 1976, states in part:

"In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, . . . the Court, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee as part of the costs."

This statute is applicable to the instant case. See *Bradley v. School Board of City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). For the above reasons, the Court determines in its discretion a reasonable attorney's fee should be awarded plaintiff herein.

Defendant Mettner has moved for dismissal as to him in that he was not a member of USD 298, and attended all meetings in his capacity as Superintendent of said district by reason of a contractual requirement that he do so. He did not vote in any matter before the Board relating to plaintiff. Defendant Cole, the then President of USD 298, moved for his dismissal from this action as he at all times abstained from voting on the dismissal of plaintiff for personal reasons. The Court finds defend-

ant Mettner should be dismissed from this case, as no cause of action is stated or proved against him. Defendant Cole, individually, should also be dismissed from the case for failure to state or prove a cause of action against him as an individual. However, Cole, as a member of the Board of Education of USD 298, is accountable for arbitrary and bad faith action taken by the Board as a whole.

While this case has remained unadjudicated and during the decision process herein, the Tenth Circuit has come down with its erudite and just ruling in *Unified School District No. 480 v. Epperson, et al* 551 F.2d 254 (slip opinion of March 18, 1977, 10 Cir.). This was one of this Court's cases involving teacher and school board rights. The salutary decision in that case, holding school boards in Kansas are not financially immune under the Eleventh Amendment to the United States Constitution, removes any impediment to effectuation of this Court's judgment.

IT IS THEREFORE ORDERED that plaintiff is entitled to judgment on his cause of action and to judicial relief and remedy against the defendants herein as follows:

Plaintiff is entitled to and must receive reinstatement and restoration to his position as a teacher in the high school of defendant School District from which he was wrongfully dismissed, at the same classification in rank as a teacher and pay scale applicable thereto to which he would presently be entitled had he continued without interruption as a teacher in such district.

Plaintiff is entitled to back-pay of $4,695.00 for the remainder of the 1973–1974 contract year as damages for defendants' bad faith dismissal of him in mid-year without due process of law.

Plaintiff is also entitled, under the "continuing contract law" to salary he would have received for each year thereafter for which he has been given no due process hearing or statutory notice prior to the Board's refusal to renew his contract. Thus, plaintiff is entitled to his salary for

the school years 1974–1975, 1975–1976, 1976–1977, as set out in Finding of Fact No. 32, to be $31,284.00.

The "continuing contract law" does not bind USD 298 to its contract with plaintiff whereby plaintiff earned $100.00 monthly driving a school bus. The actions of the parties reveal such contract was impliedly tied to plaintiff's teaching contract for the 1973–1974 school year, however, and was breached by the Board's dismissal of plaintiff just as was his teaching contract. Plaintiff is therefore entitled to $500.00 he would have earned in the remainder of the 1973–1974 school year.

Plaintiff is further entitled to interest at eight percent (8%) per annum on his accumulated salary amounts, both from teaching and bus-driving jobs, from the date each said salary amount was payable, all being liquidated amounts due and payable for each such pay period. See K.S.A. 16–204. Counsel for the parties shall agree upon the dates each salary amount became due and the total interest now owing plaintiff, and submit such to the Court in a separate journal entry.

Plaintiff is entitled to recover from defendants all reasonable attorney's fees and expenses incurred in the prosecution of this action. Plaintiff's counsel shall submit in affidavit form a detailed statement of the hours of legal preparation, type of legal work performed, prevailing customary legal charges in this area, from which the Court can make an informed judgment on the amount of attorney's fees to be awarded for the use and benefit of plaintiff and counsel. Defendants may request a formal in-court hearing on the amount of fees to plaintiff's counsel upon proper motion within a reasonable time of the filing of this opinion.

No evidence was presented to the Court as to any other basis for damages, such as damage to reputation, and therefore plaintiff's request for further damages is denied.

IT IS FURTHER ORDERED that defendant Mettner, and defendant Cole, as an individual, are dismissed with prejudice from this action.

IT IS FURTHER ORDERED that defendants pay the costs of this action.