22467

Wallace E. KIZER, Appellant v. DORCHESTER COUNTY VOCATIONAL EDUCATIONAL BOARD OF TRUSTEES, Respondent.

(340 S. E. (2d) 144)

Supreme Court

*Richard Mark Gergel* and *Timothy R. Fincher*, of *Gergel & Burnette*, Columbia, *for appellant.*

*Bruce E. Davis*, of Camden, and *James B. Richardson, Jr.*, of *Ham & Richardson*, Columbia, *for respondent.*

Heard Dec. 16, 1985.

Decided Feb. 6, 1986.

*Per Curiam:*

Appellant Wallace E. Kizer was dismissed as Director of the Dorchester County Career School by the Dorchester County Vocational Educational Board of Trustees. The Circuit Court affirmed the Board's action, and this appeal followed. We affirm, adopting the Circuit Court order as modified.

For five years (1978-1983), appellant was employed as Director of the Dorchester County Career School. His entire tenure as Director of the School was engulfed in controversy. At the end of the 1981-82 school year, the Board of Trustees gave every employee of the school, including the Director, written notice of its troubled concern about the growing friction and discord among the faculty and staff. The problems continued. On May 19, 1983, the Board of Trustees sent a letter to appellant, notifying him of a hearing to determine whether termination would be appropriate due to his alleged "manifest unfitness for employment."

The matter was heard by the Board on June 10 and 11, 1983. The seventeen hours of hearing revealed an environment characterized by continuing conflict and turmoil between the Director and the school faculty and staff. This situation (admitted by appellant) was largely the product of appellant's calloused insensitivity to basic human concerns and inexcusably abrasive and juvenile behavior in dealing with colleagues. By letter of June 22, 1983, the Board of Trustees advised Mr. Kizer of its decision to terminate his employment. This appeal followed.

South Carolina law specifically vests in the board of trustees the power and duty to "[e]mploy and discharge teachers." Section 59-19-90(2) of the 1976 *Code of Laws of South Carolina* provides in pertinent part "The board of trustees shall ...[e]mploy teachers—and discharge them when good and sufficient reasons for so doing present themselves." The standard applicable to judicial review of the school board decision is limited to a determination of whether the decision is supported by "substantial evidence." The Court cannot substitute its judgment for that of school authorities, in view of the powers, functions and discretion which must necessarily be vested in such authorities if they are to execute the duties imposed upon them. *Laws v. Richland County School Dist. No. 1,* 270 S. C. 492, 243 S. E. (2d) 192 (1978). "Substantial evidence" is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the Board reached or must have reached in order to justify its action. *Laws, supra,* 243 S. E. (2d) at 192.

Mr. Kizer does not challenge the decision of the Board to dismiss him on the merits. Instead, his appeal hinges entirely on alleged due process violations. The evidence of immature and grossly unprofessional acts of mismanagement and misbehavior is so overwhelming that it is obvious from even a brief review of the evidence why appellant bases his appeal on procedure, rather than on the merits. He claims the Board's action was in contravention of its policy relating to the Director's employment, and alleges disqualifying bias on the part of the chairperson of the Board, Mrs. Claudia Hart.

Although the existence of the Board's termination policy is disputed, it is unnecessary to reach this issue. Assuming the policy exists, there has been no violation of it. The policy provided in pertinent part as follows:

> If a majority of the Board finds the services of the Director to be unsatisfactory, he shall be notified in writing and given an opportunity to correct the conditions. If the conditions are not corrected, he shall be

given notice in writing at least two (2) months prior to the expiration of his contract and his services shall not be retained.

This reflects an obvious intent to incorporate and follow the lead of Section 59-25-440 of the Teacher Employment and Dismissal Act (*see* Code of Laws of South Carolina 1976) calling for written notice of any reason that may lead to dismissal or non-renewal and an opportunity to correct the problem. Interpretation is properly aided by consideration of statutory provisions which have direct reference to the field of education. Absent contractual language to the contrary it may be assumed that when words or phrases utilized in a teaching contract incorporate terms given specific meaning by statute, it was intended to give the statutory meaning to the contractual terms. *Stow Teachers Association v. Stow Board of Education,* 2 Ohio App. (3d) 82, 440 N. E. (2d) 827 (1981). Hence the language of the policy is to be construed *in para materia* with South Carolina's Teachers Employment Dismissal Act. In *Adams v. Clarendon County School Dist. No. 2,* 270 S. C. 266, 241 S. E. (2d) 897 (1978), the Supreme Court stated when one is dismissed for "evident unfitness for teaching," the requirements of Section 59-25-440 do not apply and all that is required is "prior notice and an opportunity to be heard." 241 S. E. (2d) at 900 & 901; therefore, the policy would have no applicability here.

Furthermore, public policy does not allow recognition of appellant's claim. In the landmark decision of *Brown v. Board of Education,* 347 U. S. 483, 74 S. Ct. 686, 98 L. Ed. 873 (1954), the United States Supreme Court said the following about the role and importance of public education:

Today, education is perhaps the most important function of state and local governments. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society. It is required in the performance of our most basic public responsibilities, even service in the armed forces. It is the very foundation of good citizenship. Today it is a principal instrument in awakening the child to cultural

values, in preparing him for later professional training, and in helping him to adjust normally to his environment. In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education. 347 U. S. at 493, 74 S. Ct. at 691.

High quality education for the students must be the ultimate goal of every school system. In recognition of "the public's legitimate interest in quality education," the South Carolina General Assembly has authorized the immediate dismissal from teaching "at any time" of one guilty of conduct manifesting "an evident unfitness for teaching" with no obligation to give written notice of the problem or opportunity to correct. To remove from the school one whose conduct manifests an evident unfitness for teaching, all that is required is "prior notice and opportunity for hearing." *See* Section 59-25-430, Code of Laws of South Carolina as interpreted by *Adams.* Therefore, the officially enunciated public policy of this State is to provide for immediate removal of those whose conduct manifests evident unfitness. Such conduct is undeniably and abundantly present in this case. To construe a school board policy statement as an integral part of a contractual agreement precluding the immediate removal "at any time" as authorized by State law, of one who, among other things, (1) reprimands teachers in the presence of other teachers and students referring to them as "stupid," (2) hides an employee's keys knowing the employee is looking for them, (3) foolishly and irresponsibly obstructs the provision of emergency medical service for a pregnant student suffering a miscarriage and when told the child had miscarried into the commode reacts with the callous expression of "that's one more we won't have to pay for," (4) describes himself as "one tough son-of-a-bitch — tough to work for," (5) calls a teacher a "son-of-a-bitch" causing the teacher to push him against the wall and threaten to "tear his head off," (6) addresses another teacher with intemperate language causing her to respond by telling the Director of the School that "you get off my ass, I'll charge you $.50 to get off," and the like resulting in a school environment filled with turmoil, tension, conflict, fear and an absence of trust and respect for the Director threatening the very existence

of the school, would certainly be an agreement at war with the interests of society.

It would be an agreement against public policy — illegal and void. A school board simply does not have the authority to enter into an agreement which interferes with their duty to the public. *See* 17 Am. Jr. (2d) Contracts § 179; *Branham v. Miller Electric Co.,* 237 S. C. 540, 118 S. E. (2d) 167 (1961).

Not only would it be an agreement against public policy, but it would also be an agreement against State law as well. Section 59-19-110 of the Code of Laws of South Carolina provides in pertinent part, as follows:

> "The boards of trustees of the several school districts may prescribe such rules and regulations *not inconsistent* (emphasis added) with the statute law of this State as they may deem necessary or advisable to the proper disposition of matters brought before them."

To construe the policy statement as prohibiting the Board from exercising its authority and *duty* under State law to dismiss "at any time" one whose conduct manifests an evident unfitness, Section 59-19-90(2) and 59-25-430 of the *Code; See also Adams,* would be inconsistent with State law and, therefore, void. Appellant's interpretation of the policy's applicability would negate any right on the part of the Trustees to dismiss a Director of the School regardless of how egregious his conduct may be unless and until written notice of and opportunity to correct the conduct has been given. The law neither requires nor permits such absurdity. *Adams; cf. Potter v. Kalama Pub. Sch. Dist.,* 31 Wash. App. 838, 644 P. (2d) 1229 (1982).

The appellant next contends the Board chairperson, Mrs. Hart, made statements and took actions prior to the Board's hearing which indicated prejudgment of the facts and personal animosity towards appellant, rendering her participation in the final decision of the Board violative of appellant's rights under the State and Federal constitutions.

The only testimony offered in support of this claim is that of Mr. James Swygert who testified that Mrs. Hart, at an earlier meeting of the Board, said, "I can take care of the female teachers, the secretaries, Ms. Cokley, Ms. Shuler ...

Ms. Crutchfield," and that while Mrs. Hart expressed no opinion concerning whether Mr. Kizer should continue his employment with the school, she did say "it would be best for Mr. Kizer to go than to lose some of the teachers."

Because she could not be a witness in a matter she was charged with judging and because of pending litigation concerning the Board meeting at which these utterances were allegedly made, Mrs. Hart was precluded from responding to the testimony of Mr. Swygert. But even assuming, *arguendo*, that the testimony of Mr. Swygert is accurate, it affords no basis for the disqualification of Mrs. Hart to sit as a member of the Board and participate in the decision to terminate appellant's employment.

School board members are clothed with a presumption of honesty and integrity in the discharge of their decisionmaking responsibilities. *cf. Withrow v. Larkin*, 421 U. S. 35, 47, 95 S. Ct. 1456, 1464, 43 L. Ed. (2d) 712 (1976); *Hortonville Joint School District No. 1. v. Hortonville Education Association*, 426 U. S. 482, 496-97, 96 S. Ct. 2308, 2316, 49 L. Ed. (2d) 1 (1976). In order to disqualify a hearing tribunal, actual bias rather than a mere potential for bias must be shown. *Welch v. Barham*, 635 F. (2d) 1322, 1325 (1980); *Crane v. Mitchell County Unified School District No. 273*, 232 Kan. 51, 652 P. (2d) 205 (1982), *Megill v. Bd. of Regents*, 541 F. (2d) 1073, 1079 (1976). Individual decision makers must not have exhibited bias as to the factual questions to be decided at hearing, and evidence of actual bias which offends due process consists of statements on the merits by those who must make factual determinations on contested fact issues where fact finding is critical. *Staton v. Mayes*, 552 F. (2d) 908, 914 (1977); *Bogart v. Unified School District No. 298 of Lincoln City*, 432 F. Supp. 895 (1977). It is not actual bias to have made statements as to policy issues related to a dispute, nor to have stated charges in instigating an investigation of such. *Staton*, 552 F. (2d) at 904. The factual questions decided at the hearing are set forth in the Chairmen's notice letter of May 19, 1983, to Mr. Kizer. No claim is made by appellant that Mrs. Hart made statements regarding the factual issues involved in this case which would indicate the existence of bias or prejudice. Unless there is evidence that preformed opinions of board members

are fixed and unchangeable, or that in the deliberations after hearing all the evidence, the result was dictated by such a preformed opinion, the appellant cannot successfully maintain that he was deprived of a fair and impartial hearing. *Crane v. Mitchell County Unified School District No. 273*, 232 Kan. 51, 652 P. (2d) 205 (1982). As noted by the Court in *Belsinger v. District of Columbia*, 295 F. Supp. 159 (1969):

> ...[T]o assume that any tribunal approaches a cause completely devoid of predictions or initial reactions is unrealistic. To nullify a ruling of a quasi-adjudicatory body on the basis of bias or prejudgment requires a substantial showing of a "predetermined purpose to reach a determined end."
>
> In order to hold that a public stance disqualifies a tribunal, a Court should find in the import of the words or actions either the likelihood or the appearance of likelihood that the minds of the members thereof are effectively foreclosed to reason and persuasion from one side. 295 F. Supp. at 162.

*Cf. Welch v. Barham*, 635 F. (2d) 1322, 1327 (1980), where the Court required a showing "to demonstrate irrevocable prejudgment." The kind of statement allegedly made by Mrs. Hart that she was aware of certain witnesses who would testify is certainly no statement on the merits of the factual issues to be decided and has been held not to constitute bias or prejudice. *See Norbeck v. Davenport Community School District*, 545 F. (2d) 63 at 69 (1976). Neither is the alleged statement of Mrs. Hart that it "would be better for Mr. Kizer to go than to lose the teachers" a statement on the merits of the factual questions decided at the hearing. Such statements, even if made by Mrs. Hart, are nothing more than comments reflecting a concern for the well-being of the school and a felt necessity to investigate an intolerable situation. They do not "demonstrate irrevocable prejudgment" or reflect a mind "effectively foreclosed to reason and

persuasion from one side."[1] There is nothing in the record to support appellant's charges against Mrs. Hart of personal animosity or prejudgment of the factual questions decided at the hearing. The testimony simply does not demonstrate bias that disqualifies a decision-maker under the due process clause. She has neither said nor done anything that shows her not "capable of judging (this) particular controversy fairly on the basis of its own circumstances." *Hortonville Joint School District No. 1 v. Hortonville Education Association,* 426 U. S. 482, 493, 96 S. Ct. 2308, 2314, 49 L. Ed. (2d) 1 (1976). Therefore, she preserved the presumption of honesty and integrity with which she is clothed as a school board member. *Withrow; Hortonville.*

This Court finds the applicable due process standards have not been violated. The decision of the Board is supported by substantial evidence of misconduct manifesting evident unfitness for teaching.

Affirmed.

---

[1] The Board's letter of decision of June 22, 1983, shows a Board that carefully and agonizingly considered its decision — not a Board with a preformed, fixed and unchangeable opinion.