657 S.E.2d 469

**JAMES ACADEMY OF EXCELLENCE, Respondent**

v.

**DORCHESTER COUNTY SCHOOL DISTRICT TWO, Appellant.**

**No. 26428.**

Supreme Court of South Carolina.

Submitted Dec. 6, 2007.

Decided Feb. 4, 2008.

Alice F. Paylor, of Rosen, Rosen & Hagood, LLC, of Charleston; and Arnold S. Goodstein, of Goodstein Law Firm, of Summerville, for appellant.

Respondent pro se.

Justice MOORE:

This appeal is from a circuit court order regarding appellant Dorchester County School District Two's (District's) conditional approval of a charter school application. We reverse.

## FACTS

Respondent James Academy of Excellence (Academy) applied to District for a charter school to open in the 2004–2005 school year for 300 students in grades six through twelve. On August 11, 2003, District's Board of Trustees voted to give "conditional approval to the school contingent upon the school finding a site in [District]."

On May 4, Academy advised District that it had located a site for the school on Dorchester Road. District made two payments of $43,855.63 to Academy on July 16 and July 30 based on Academy's student enrollment.[1] Academy subsequently decided to use a different site on Landmark Drive instead of Dorchester Road and retained an architect for building repairs. On July 16, the State Department of Education (State Department) approved plans for the building and gave permission to take bids on work to be done.

District's public schools opened on August 9. Academy advised District it was not ready to open. On August 12, District's assistant superintendent went to Academy's facility. There was no equipment in the school and the school was not operational although Academy's representative said they were "hoping to open at any time." On August 16, the assistant superintendent again went to visit the school and was redirected to the Heritage Trust Building where Academy had found a temporary location. When District reported to State Department that Academy was operating in a different building than the one submitted for approval, State Department directed District to close the school.

On August 17, District's superintendent went to Academy's temporary location at the Heritage Trust Building and delivered a letter stating that because Academy had not met the

---

1. Academy also received a $20,000 planning grant and a $200,000 start-up grant from the State Department of Education to fund the school.

conditions of approval for the charter school, there was no contract with District and Academy was therefore not authorized to operate a charter school. Academy was directed to inform parents to enroll their students in other schools. District also demanded a refund of the $87,711.26 it had given Academy to fund the school.

Academy's Landmark Drive site subsequently received a conditional certificate of occupancy from the Office of School Facilities on August 23 and the school began holding classes there on that date. On September 21, District's Board of Trustees (District Board) held an administrative hearing to determine the status of Academy's school. District Board determined that Academy had not met four conditions for approval—space, facility, equipment, and personnel—and therefore no charter contract existed with District; however, the board decided to allow Academy until September 28, 2004, to comply with these conditions.

Academy did not meet the conditions for approval as directed by the District Board and instead filed an appeal with the State Board of Education (State Board). Academy also demanded from District charter school funding that District had withheld.

The State Board ruled that Academy's application had been conditionally approved for a charter school with only one condition—an appropriate facility—and not the four conditions noted by the District Board. The State Board concluded that Academy had not met the facility condition because the school's facility did not meet the description in Academy's application for a charter school. The State Board therefore affirmed the District Board's decision.

On appeal, the circuit court concluded that District's conditional approval of Academy's application did not specify that the deadline for compliance was the opening of school. Further, when Academy started operating as a school on August 16, it "acquired rights that triggered the due process provisions of § 59-40-110." The court concluded these due process rights were violated when the superintendent notified Academy on August 17 that it could not operate as a charter school. Finally, the court ruled that the facility description set forth in Academy's application was not the standard to determine

whether Academy had met the condition for an appropriate site. The State Board's decision finding no charter school contract was therefore reversed.

The circuit court subsequently held an evidentiary hearing and determined that Academy was entitled to damages amounting to $259,821.90 for rent reimbursement and student stipends from District. District appeals.

## ISSUES

1. Was there a due process violation?
2. Did a contract for a charter school exist?
3. Were damages properly awarded?

## DISCUSSION

### 1. Due process

The circuit court found Academy had acquired "certain rights" under the conditional charter it received from District and therefore Academy was entitled to notice and a hearing before its status as a charter school could be terminated. The court concluded Academy's due process rights had been violated. District contends this was error. We agree.

First, the Charter School Act specifically provides that no rights accrue from a conditional charter. As stated in S.C.Code Ann. § 59–40–80 (2004): [2]

**§ 59–40–80. Conditional authorization of charter school.**

A sponsor may conditionally authorize a charter school before the applicant has secured its space, equipment, facilities, and personnel if the applicant indicates such authority is necessary for it to meet the requirements of this chapter. **Conditional authorization does not give rise to any equitable or other claims based on reliance, notwithstanding any promise, parole** *(sic)*, **written, or otherwise, contained in the authorization or acceptance of it, whether preceding or following the conditional authorization.**

---

**2.** The Charter School Act was subsequently amended in 2006. This section has remained substantially the same.

(emphasis added). Under this provision, Academy acquired no rights based on its conditional charter. This provision ensures that the local school district maintains control during the approval process while allowing a prospective charter school to receive funding and proceed in setting up its operation.

 The interests protected by the Due Process Clause are defined not by the constitution but by independent sources such as state law. *Lexington County Sch. Dist. One Bd. of Trustees v. Bost,* 282 S.C. 32, 316 S.E.2d 677 (1984) (*citing Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Here, state law provides that the conditional authorization of a charter school creates no rights in the applicant. Accordingly, there are no due process rights implicated in the termination of a conditional charter.

██ Moreover, any lack of due process was remedied by the evidentiary hearing before the District Board when the District Board gave Academy additional time to comply. *See Ross v. Med. Univ. of South Carolina,* 328 S.C. 51, 492 S.E.2d 62 (1997) (state may cure procedural deprivation of due process rights by later procedural remedy). In conclusion, there was no deprivation of due process and the circuit court erred in so finding.

### 2. Conditions for approval

The circuit court found that the facility description in Academy's application was not the standard to determine if Academy had complied with the facility requirement. The court held it was "arbitrary and capricious" to hold Academy to the terms of its application which was "completed many months prior to the school's opening [when] there were many unknown variables. . . ." The circuit court found a binding charter existed. District contends this was error. We agree.

The Charter School Act provides that "**the charter school application shall be a proposed contract**" and it must include certain terms, including a description of the facility. S.C.Code Ann. § 59–40–60(F)(10) (2004) (emphasis added). The terms of an approved charter application become the terms of the agreement between the parties. § 59–40–60(A). A material revision of the terms of the agreement requires the approval of both parties. § 59–40–60(C).

■■■ This statutory language clearly envisions the charter school's fulfillment of the terms of its application as a contractual obligation. Here, Academy never sought to amend its application. It is uncontested that Academy's facility did not meet the terms set forth in Academy's application and the facility was never approved by District. The application described a facility with approximately 25,000 square feet, a minimum of fourteen classrooms, a science lab, computer lab, cafeteria, administration offices, a main office, a multi-purpose room, and restrooms. Academy's facility is 6,700 square feet and has none of the requisite rooms except for restrooms.

We find the circuit court erred in ignoring the requirements of the Charter School Act and ruling that Academy was not required to meet the terms set forth in its application. Under the Charter School Act, no charter existed and Academy was not operating as a charter school.

### 3. Damages hearing

■ After finding a binding contract, the circuit court held an evidentiary hearing over District's objection and awarded damages to Academy. District contends the circuit court had no authority to hold a hearing on damages while sitting as an appellate court in this administrative appeal. We agree. The circuit court heard this case on appeal from the State Board, a state agency. *See* S.C.Code Ann. § 1–23–310(2) (2005) ("Agency" means each state board). Review of a state agency decision is confined to the record. § 1–23–380(A)(5) (2005).[3] The circuit court clearly exceeded its authority in holding an evidentiary hearing on the issue of damages.

■ Moreover, as discussed above, a contract for a charter school did not exist. Damages should not have been awarded since District was not obligated to fund the school. Accordingly, the decision of the circuit court is

**REVERSED.**

TOAL, C.J., WALLER, PLEICONES and BEATTY, JJ., concur.

---

3. This section was subsequently amended in 2006 and the subsection was re-numbered.