**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Mary L. Dinkins Higher Learning Academy, Appellant,

v.

South Carolina Public Charter School District, Respondent.

Appellate Case No. 2013-000525

Appeal From the Administrative Law Court
Shirley C. Robinson, Administrative Law Judge

Unpublished Opinion No. 2015-UP-338
Submitted June 24, 2015 – Filed July 8, 2015

**AFFIRMED**

Appellant is not represented by counsel.

Karl Smith Bowers, Jr., of Columbia, for Respondent.

**PER CURIAM:** The appellant Mary L. Dinkins Higher Learning Academy (the Academy) is a charter school member of the respondent South Carolina Public Charter School District (the District). In 2012, the District's Board of Trustees (the Board) revoked the Academy's charter for alleged violations of the South Carolina Charter Schools Act (the Act), *see* S.C. Code Ann. §§ 59-40-10 to -240 (2004 & Supp. 2014). The administrative law court (ALC) affirmed the Board's decision

based on finding the Academy "failed to meet the academic performance standards and expectations as defined in the charter application," S.C. Code Ann. § 59-40-110(C)(2) (Supp. 2014), and "committed a material violation of the conditions, standards, performance expectations, or procedures provided for in the charter application," S.C. Code Ann. § 59-40-110(C)(1) (Supp. 2014).

Our standard of review is limited to whether substantial evidence supports the ALC's decision. *See* S.C. Code Ann. § 1-23-610(B) (Supp. 2014) (providing this court may reverse if the ALC's decision is "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record"). "The mere possibility of drawing two inconsistent conclusions from the evidence does not prevent a finding from being supported by substantial evidence." *Olson v. S.C. Dep't of Health & Envtl. Control*, 379 S.C. 57, 63, 663 S.E.2d 497, 501 (Ct. App. 2008).

The Academy argues the ALC erred in finding substantial evidence supported the Board's decision to revoke the charter under subsection 59-40-110(C). We disagree. "An approved charter application constitutes an agreement between the charter school and the sponsor." S.C. Code Ann. § 59-40-60(A) (Supp. 2014); *see also* S.C. Code Ann. § 59-40-60(B) (Supp. 2014) ("All agreements regarding the release of the charter school from school district policies must be contained in the contract."). The Act does not give school districts discretion with respect to revocation decisions when a charter school violates its charter. *See* § 59-40-110(C) (listing situations under which a "charter *must* be revoked" (emphasis added)); *James Acad. of Excellence v. Dorchester Cnty. Sch. Dist. Two*, 376 S.C. 293, 300, 657 S.E.2d 469, 472 (2008) (holding the trial court erred "in ignoring the requirements of the Charter School Act and ruling that Academy was not required to meet the terms set forth in its application"). Even considering the evidence that is favorable to the Academy, we find the ALC's decision must be affirmed because it is supported by substantial evidence.

The Academy next argues the ALC erred in finding the Board violated South Carolina Code subsection 59-40-110(A) (Supp. 2014) because the Board (1) granted the Academy a one-year provisional charter, and (2) failed to conduct an audit for the 2010-2011 and 2011-2012 school years. As to the first argument, we find the ALC correctly determined the District did not violate the Act by granting a one-year provisional charter. The Academy agreed to operate under a probationary status for one year before the District made a final decision regarding renewal of its application. *See* § 59-40-60(A) ("An approved charter application constitutes an agreement between the charter school and the sponsor."); S.C. Code Ann. § 59-

40-60(C) (Supp. 2014) ("A material revision of the terms of the contract between the charter school and the sponsor may be made only with the approval of both parties."); *S. Atl. Fin. Servs., Inc. v. Middleton*, 356 S.C. 444, 447, 590 S.E.2d 27, 29 (2003) ("[I]f the terms of a contract are clear and unambiguous, this Court must enforce the contract according to its terms . . . ."). Moreover, no provision of the Act prohibits such an agreement between a sponsor and transferring charter school. Regarding the Academy's second argument, we find substantial evidence supports the ALC's conclusion that the Board relied on the annual evaluation results in deciding to revoke the charter, as required by subsection 59-40-110(A). *See id.* ("The sponsor annually shall evaluate the conditions outlined in subsection (C). The annual evaluation results must be used in making a determination for nonrenewal or revocation.").

The Academy also argues the Board did not hold the revocation hearing within the time limits set forth under the Act. We disagree. First, South Carolina Code subsection 59-40-110(H) (Supp. 2014) requires only that the Board give notice of the hearing date once a charter school requests a hearing and does not require the Board to hold the hearing within a certain time frame. Second, we agree with the ALC that the sixty-day notice in South Carolina Code subsection 59-40-110(F) (Supp. 2014) applies to the date the school is closed, not the date of the revocation hearing. Specifically, subsection 59-40-110(F) provides that notice "of the proposed action" must be given "[a]t least sixty days before not renewing or terminating a charter school." Subsection 59-40-110(H) further provides that, after a hearing, the sponsor "shall take final action to renew or not renew a charter." When read together, we interpret the provision "before not renewing . . . a charter" in subsection 59-40-110(F) as referring to the Board's "final action to renew or not renew a charter" mentioned in subsection 59-40-110(H). Thus, we find the ALC correctly concluded the Board held the hearing within the time frame set forth in the Act. The Academy received notice of the proposed revocation on February 23, 2012, and the effective date of revocation was the end of the school year, well beyond the sixty-day time frame mandated by the Act.

Finally, the Academy asserts it was denied due process during the revocation proceedings because the Board served in prosecutorial and adjudicatory capacities. *See* S.C. Const. art. I, § 22 (stating in "judicial or quasi-judicial" proceedings of an administrative agency, "[n]o person shall be . . . subject to the same person for both prosecution and adjudication"). First, we find the Act is not unconstitutional merely because it allows the District to investigate and present evidence of alleged violations to the Board. *See Garris v. Governing Bd. of S.C. Reinsurance Facility*, 333 S.C. 432, 443, 511 S.E.2d 48, 54 (1998) ("The fact that investigative,

prosecutorial, and adjudicative functions are performed within the same agency, or even performed by the same persons within an agency, does not, without more, constitute a violation of due process."); *Babcock Ctr., Inc. v. Office of Audits*, 286 S.C. 398, 402, 334 S.E.2d 112, 114 (1985) (stating due process does not "prohibit a single agency . . . from combining investigative and adjudicative functions, one group or individuals passing upon facts developed by others within the same organization" (citation omitted)).

Second, we find the Academy's due process rights were not violated by the conduct of the chairman of the Board and superintendent of the District. The superintendent who led the investigation was not a Board member and did not vote on the revocation decision, and there is no evidence the Board members, including the chairman, had any involvement with the investigation or formed opinions before the hearing regarding the merits of the case. *See Ross v. Med. Univ. of S.C.*, 328 S.C. 51, 69, 492 S.E.2d 62, 72 (1997) (holding no due process violation where the university's president, who investigated and then terminated a tenured professor, testified at the professor's termination hearing because the president "did not later participate as an adjudicator"); *Kizer v. Dorchester Cnty. Vocational Educ. Bd. of Trs.*, 287 S.C. 545, 552-53, 340 S.E.2d 144, 148 (1986) ("Unless there is evidence that preformed opinions of board members are fixed and unchangeable, or that in the deliberations after hearing all the evidence, the result was dictated by such a preformed opinion, the appellant cannot successfully maintain that he was deprived of a fair and impartial hearing."). *Cf. Garris*, 333 S.C. at 445, 511 S.E.2d at 55 (finding due process violation because "future adjudicators" were placed "in situations where they had the opportunity to form . . . premature opinions" before the hearing and were "intimately involved in the investigative and prosecutorial processes as committee members"); *Ross*, 328 S.C. at 70, 492 S.E.2d at 72 (finding due process violation when the university's vice president "investigated the faculty complaints" against a tenured professor and then "sat as the intermediate judge in the three-step disciplinary procedure").

**AFFIRMED.**[1]

**FEW, C.J., and HUFF and WILLIAMS, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.