18479

Charles S. PORTER, Respondent, v. PEPSI-COLA BOTTLING COMPANY OF COLUMBIA, S. C., Citizens & Southern National Bank of South Carolina and Malcolm W. Platt, South Carolina National Bank and Lawrence L. Layman, Appellants.

(147 S. E. (2d) 620)

*Messrs. Rogers, McDonald & Ross,* of Columbia, *for Appellants,*

*Messrs. Henry Hammer* and *Claude N. Sapp*, of Colum-bia, *for Respondent,*

*Messrs. Rogers, McDonald & Ross*, of Columbia, *for Appellants, in Reply,*

March 28, 1966.

LEWIS, Justice.

The plaintiff, sales manager of defendant Pepsi-Cola Bot-tling Company of Columbia, South Carolina, Inc., was

discharged from his employment for alleged insubordination in failing to carry out instructions of his superiors with regard to union activities among employees of the company. This appeal involves a determination of the effect of the discharge of plaintiff for such reason upon his right to recover accrued benefits under a profit sharing plan established solely by the employer for its employees.

The defendant Pepsi-Cola Company entered into a profit sharing plan and trust agreement in 1958 providing for the payment of certain benefits to its eligible employees upon termination of their employment or retirement. It provided for contributions by the employer from its profits each year to a trust fund out of which benefits were payable. The plan further provided that if any employee is discharged by the employer "because of such employee's insubordination, gross inefficiency, proven dishonesty, commission of a misdemeanor or felony or other misconduct" his benefits under the plan are forfeited and all rights thereunder terminated.

The plaintiff was employed by the defendant Pepsi-Cola Company for approximately 25 years. He was discharged on October 29, 1963, for alleged insubordination. At the time of his discharge the plaintiff was a member of the supervisory personnel of the company, occupying the position of sales manager.

After his discharge, plaintiff brought this action against the defendant Pepsi-Cola Company and the trustees of the profit sharing plan to recover accrued benefits thereunder. The defendants denied plaintiff's right to recover upon the ground that he had been discharged from his employment for insubordination and therefore forfeited all rights to benefits under the plan. The trial in the lower court resulted in a verdict in favor of the plaintiff.

At appropriate stages of the trial, defendants made motions for nonsuit, directed verdict, judgment notwithstanding the verdict or in the alternative for a new trial. The motions were denied, and the defendants have appealed from the rulings thereon.

While several questions have been raised by the exceptions, the only one which we need consider is whether the evidence conclusively showed that the action of the employer in terminating plaintiff's employment precluded his recovery of benefits under the profit sharing plan, so as to have required the direction of a verdict in favor of the defendants by the lower court.

It is conceded that the terms of the profit sharing agreement are binding on the parties, including the conditions stated therein relative to eligibilty of employees to receive benefits; and that plaintiff, upon termination of his employment with defendant Pepsi-Cola Company, was eligible to receive benefits under the plan, unless his employment was properly terminated for one of the foregoing disqualifying reasons.

Admittedly, plaintiff's discharge arose out of his activities in connection with efforts being made by the Teamsters Union to organize the employees of the defendant Pepsi-Cola Company. The material facts leading to his discharge are not in dispute. The company management opposed the efforts of the union to organize its employees and this fact was communicated to plaintiff. He was a part of the supervisory personnel, ineligible to become a member of the union, and was instructed by his superiors to keep them advised of any union activities. Although plaintiff had knowledge of the activities of the union in connection with the organization of the company's employees, he not only failed and refused to inform his superiors thereof but met with union representatives on several occasions and personally signed a union card. Upon learning of the plaintiff's actions in connection with the union and his failure to report any knowledge of union activities to his superiors, as he had been instructed to do, the company discharged the plaintiff for insubordination.

Insubordination is generally held to import a wilful or intentional disregard of the lawful and reasonable instructions of the employer. *Freeman v. King Pon-*

*tiac Co.,* 236 S. C. 335, 114 S. E. (2d) 478. The following from 35 Am. Jur., Section 44, page 478, is quoted with approval in the cited case:

"Among the fundamental duties of the employees is the obligation to yield obedience to all reasonable rules, orders, and instructions of the employer, and wilful or intentional disobedience thereof, as a general rule, justifies a recission of the contract of service and the peremptory dismissal of the employee, whether the disobedience consists in a disregard of the express provisions of the contract, general rules or instructions, or particular commands. This rule is not restricted to employees in subordinate positions, but applies to those employed in executive or supervisory capacities, although with respect to the latter it is recognized that they are not bound to such strict adherence to directions as is one whose employment involves the exercise of less degree of responsibility and discretion. The fact that an employee holds a position of authority over others, involving the exercise of executory and supervisory powers, does not relieve him from the duty of obedience to orders of the superiors."

The record conclusively shows that the plaintiff, in his supervisory position, was, in effect, a part of management and ineligible to become a member of the union. He knew that management opposed the union. He had been instructed to report to his superiors any union activities which came to his knowledge. However, in direct opposition to the position of management, of which he was a part, upon a matter considered of vital importance to the company, the plaintiff secretly met with union representatives, signed a union card, and refused to report such activities to his superiors. The reason given by plaintiff for his actions was that he considered it best for the business. Such conduct on the part of the plaintiff constituted a wilful and intentional disobedience of the employer's instructions and constituted insubordination. His discharge for such reason amounted to a forfeiture of all benefits under the terms of the profit sharing plan.

The plaintiff contends, however, that the action by the employer, in discharging the plaintiff because of his activities in connection with the labor union, was illegal under our Right to Work Law and the Federal Taft-Hartley Act, and therefore could not operate to deprive the plaintiff of benefits due him under the profit sharing plan.

It must be kept in mind that we are not here dealing with the activities of an employee eligible to become a member of the labor union, but with a sales manager, ineligible to join, who was management's direct contact with the employees under him. The company's employees were not at the time organized by the union. The union was simply engaged in organizational efforts. The employer opposed the union, as it had a right to do. In so doing, the company's general manager had instructed his supervisory personnel, including the plaintiff, to keep him advised of any information coming to them about the union's efforts to organize the employees. This was not an inquiry into the manner in which the labor union conducted its internal affairs, nor was it prying into union affairs or spying on union membership. It was a legitimate inquiry by the employer, within permissible bounds, to proper persons, about a matter considered of importance to the company and with which the company had a right to expect its management personnel to comply.

As a part of the management of the company, ineligible to join the union, the plaintiff had no right to promote the organization of the union in direct opposition to the known policies of management which he represented. This was not a restraint upon plaintiff's right to join a union because he was ineligible to join. The fact that the plaintiff was discharged, in part, for his union activities could not deprive any other employee of his legitimate right to join a union or affect the exercise of any such right, because the support of management in efforts of the union to organize employees of the company is not one of the rights guaranteed by the law.

Since the evidence conclusively shows that the plaintiff was properly discharged because of insubordination, he was ineligible to receive benefits under the profit sharing plan, and the lower court should have directed a verdict in favor of the defendants.

We have carefully reviewed the authorities cited by plaintiff in support of his position, but find them inapplicable to the present factual situation.

Finally, the plaintiff contends that his discharge for alleged insubordination cannot operate as a forfeiture of his rights because there was no compliance with the provisions of the plan which required that any action of the company pursuant to the terms thereof shall be evidenced by a certified resolution of the Board of Directors of the company and notice in writing by the administrative committee to the trustees.

The administration of the profit sharing plan herein is placed in an "administrative committee" which is given the power to determine all questions which arise under the plan, including the eligibility of employees to participate therein. The agreement or plan provides that "Any determination or action of the Company pursuant to the provisions of this Agreement shall be evidenced by a resolution of the Board of Directors of the Company certified to the Trustees by the Secretary or an Assistant Secretary under the corporate seal of the Company. * * * All notices, advices, directions and instructions to be given by the Committee to the Trustees as provided in this Agreement shall be in writing and signed in the name of the Committee by a majority of the members of the Committee * * *."

The agreement under which the profit sharing plan was set up clearly shows that the foregoing administrative procedures were designed solely to protect the trustees in the disbursement of funds entrusted to their care and to provide an orderly administration of the plan by requiring that action taken by the company and the adminis-

trative committee, upon which the Trustees were required to act, must be certified in writing by the proper officials. These provisions, requiring that written notice of the action of the company and the administrative committee be given to the trustees, were not intended to affect the merits of an employee's claim. It is undisputed in this case that the plaintiff was discharged for insubordination, that the administrative committee denied his claim for that reason, and that he had notice of such action. The fact that written notice was not given to the trustees of such action in no way prejudiced any right of the plaintiff.

The judgment herein is accordingly reversed and the cause remanded for entry of judgment in favor of the defendants.

Moss, Bussey and Brailsford, JJ., concur.