20649

George E. LAW, Jr., Respondent, v. RICHLAND COUNTY SCHOOL DISTRICT No. 1, a body politic and corporate, Dr. Brandon B. Sparkman, Superintendent of Education; and members of the Board of Trustees of District No. 1, Mr. Joe E. Bales, Dr. Edward E. Kimbrough, Dr. William H. Lindler, Mr. Sam E. McGregor, Mrs. Rosalind Sargent, Mrs. Barbara Scott, and Mr. Donald N. Upton, all such individuals named as Defendants being sued in their official capacities only, Appellants.

(243 S. E. (2d) 192)

*Francis P. Mood* of *Boyd, Knowlton, Tate & Finlay,* Columbia, *for Appellants,*

*John R. Harper II,* of Columbia, *for Respondent,*

March 20, 1978.

RHODES, Justice:

This is an appeal from an order of the lower court reversing the decision of the Board of School Commissioners for Richland County School District No. 1 to nonrenew the respondent's teaching contract. The lower court found that the grounds upon which the Board's decision was predicated were not supported by substantial evidence. We disagree and reverse.

The respondent in this action was employed as a music teacher at Hand Middle School for the 1974-75 school year. On April 2, 1975, he was advised by letter from the Director of Personnel for the school district that he was not being recommended for employment for the following school year because of the following grounds:

(a) Lack of sufficient classroom control to insure a good program of instruction;

(b) Unwise use of disciplinary action;

(c) Lack of response to suggestions from the principal in better methods of classroom management.

After a hearing held at the respondent's request, the Board issued its decision confirming the recommendation to nonrenew the respondent's contract.

The only issue raised by this appeal is whether the grounds given for nonrenewal of the respondent's contract are sufficiently supported by the evidence presented at the hearing before the Board. The respondent has not challenged the legal adequacy of his hearing before the Board. He does not contend that the procedural requirements of the Teachers Employment and Dismissal Act of 1974 [1] have not been complied with. Neither does he except to the adequacy of the grounds stated in the notice mailed him on April 2, 1975.

---

[1] Article 5 of Chap. 25, Title 59, 1976 Code of Laws of South Carolina. This Act consists of Code §§ 59-25-410 through 59-25-530.

The threshold determination in deciding whether the evidence relied upon by the Board is sufficient to support the allegations against the respondent is that of the scope and standard of review to be employed in a judicial review of the Board's decision. The lower court found the scope of review to be a limited one with the standard by which the Board's decision is to be gauged being whether the grounds given for termination of the respondent's employment are supported by "substantial evidence". We feel the lower court was correct in this determination with the result that much of the following discussion on the applicable scope and standard of review is taken from the lower court's order.

The 1974 Teachers Employment and Dismissal Act does not delineate the scope and standard applicable to judicial review of school board decisions encompassed by the Act. The Act merely states that an "appeal" may be had from the decision of the school board to the circuit court and from the circuit court to the Supreme Court. S. C. Code § 59-25-480 (1976). Consistency with relevant precedent requires that the scope of judicial review be a limited one. In view of the powers, functions, and discretion which must necessarily be vested in educational authorities if they are to execute the duties imposed upon them, this Court cannot substitute its judgment for that of these authorities. *Board of Bank Control v. Thomason,* 236 S. C. 158, 113 S. E. (2d) 544 (1960).

In *Board of Bank Control v. Thomason, supra,* this Court discussed at length the standards of judicial review applicable to the actions of administrative arms of the government. In conformity with that opinion, we conclude that the decision of the Board in this case can be set aside only if the allegations made against the respondent are unsupported by "substantial evidence".

"Substantial evidence" is not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but is evidence which, considering the

record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached or must have reached in order to justify its action. *Texas Liquor Control Board v. Cervantes,* 333 S. W. (2d) 466 (Tex. Civ. App. 1960).

Turning to the present case, a conclusion that any one of the three charges against the respondent is supported by substantial evidence will dictate that the school board's decision be sustained. Applying the principles set out above, we find there is substantial evidence to support a finding that there was a "lack of response to suggestions from the principal in better methods of classroom management".

From a reading of the record, it is clear that the allegations against the respondent are rooted in disciplinary problems prevalent in his classes. Considerable testimony was directed to these problems. Testimony indicated that some of these disciplinary problems were traceable to scheduling changes which resulted in disorder among the students. However, from the evidence, reasonable minds could easily have reached the conclusion that the problems arising in the respondent's classes were too numerous to be solely attributed to scheduling changes, and that the lack of discipline in the respondent's classes could be traced to the teaching methods he employed.

The respondent was a music teacher and, although his previous experience was apparently at the college level, his duties at Hand Middle School consisted of teaching music to sixth grade students. School authorities felt the respondent's teaching methods were inappropriate for students at the sixth grade level. From the record, it appears the respondent's music classes were lecture oriented with concentration on theory and classical music. The respondent's principal [2] testified that:

---

[2] Although this witness was not identified in the record by title or position, both briefs refer to her as the principal of Hand Middle School.

. . . I recommended after other observations . . . that this age student be given an opportunity to perform in music, that theory was above them, most of them, that we had a broad cross-section of humanity in the building and that all 6th graders are made to take Music and therefore there was being very few of them who were real musicians, and I recommended on numerous occasions that the whole class be included in singing and performance of some kind.

* * * * * *

[L]et's stop so much of the theory and technical side of music with this age child and let the child sing. This is your discipline problem. If you get the children involved, if they can do something that keeps them busy and that they're enjoying they will behave, because the kind of instruction can give you good discipline or can keep you from having it.

The above is indicative of the testimony regarding the connection between the respondent's teaching approach and the disciplinary problems prevalent in his classes. That reasonable minds could have concluded there was a causal connection is buttressed by testimony that, in at least one class, one of the students was receiving what amounted to individual piano lessons while the other students were idle.

The record is replete with testimony that suggestions and recommendations aimed at remedying the disciplinary problems by involving all of the students in the class were made to respondent by his superiors repeatedly and on numerous occasions. In accord with one recommendation, the respondent did change the position of his piano so that he faced the class. Another recommendation was that the respondent seek to establish a relationship with the student's parents because, according to the testimony, this would help with discipline. The record indicates the respondent heeded this recommendation and there was improvement because of this. However, there is no indication from the record that the respondent made any changes in his teaching methods or that there was any appreciable decrease in disciplinary problems at any

time in respondent's classes during the school year. The Board could have reasonably concluded that there was a lack of any reasonable response [3] to the recommendations made to the respondent. The testimony relating to his unresponsiveness was considerable. Typical of this testimony is that by the principal, who when being questioned about a specific disciplinary incident, stated:

He had already been told earlier, before the *Whitten* case ever happened, or these three students, that he was not taking any suggestions about teaching, about the kind of instruction to use in a middle school to change the classroom atmosphere, to teach the way those children needed to be taught, and so I had already told him just prior to this when we had discussed it and discussed it and discussed it, and I had made suggestions and observed and tried to do all we could, that he could not teach middle school students, that he had made no effort . . ..

Finding that there was substantial evidence to support the decision of the Board of School Commissioners, we sustain its action.

The order of the lower court is reversed.

Reversed.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.

---

[3] While it is true that the respondent is charged with simply a "lack of response", we feel reasonableness is implicit and the charge must be interpreted as a "lack of any reasonable response".