1761

Janis HENDRICKSON, Respondent v. SPARTANBURG COUNTY SCHOOL DISTRICT NO. FIVE, Appellant.

(413 S.E. (2d) 871)

Court of Appeals

*Richard H. Rhodes* and *J. Mark Hayes*, Spartanburg, *for appellant.*

*Helen Nelson Grant*, Columbia, *for respondent.*

Heard Dec. 9, 1991; Decided Jan. 27, 1992.

Reh. Den. Feb. 18, 1992.

SHAW, Judge:

Appellant, Spartanburg County School District No. Five, terminated the teaching contract of respondent, Janis Hendrickson, following a hearing before the Board of Trustees. Upon Hendrickson's appeal, the circuit court reversed the decision of the school board, ordered Hendrickson reinstated, and awarded her lost wages and court costs. The School District appeals. We reverse.

The sole issue on appeal is whether the circuit court erred in reversing the school board's decision to dismiss Hendrickson for slapping a handicapped student and for failing to maintain classroom control, because the record contains substantial evidence to support dismissal pursuant to S.C. Code Ann. § 59-25-430 (1976).

The record below reveals the following facts. Hendrickson was employed by the School District just prior to the beginning of the 1989-1990 school year as a special education teacher for a newly created self-contained special education learning disability class. On September 14, 1989, the School District's superintendent notified Hendrickson of her immediate suspension and of his recommendation to the school board that Hendrickson be immediately dismissed. The superintendent stated the reasons for his decision were an incident in-

volving the slapping of a student by Hendrickson and her inability to maintain control in her class. Pursuant to Hendrickson's request, a hearing was conducted before the board of trustees. After receiving testimony, the Board concurred with the superintendent's recommendation of Hendrickson's dismissal.

Hendrickson appealed the board's decision and, following arguments from the parties' attorneys, the circuit court reversed the board's decision finding the evidence insufficient "to meet the legal requirements of manifest unfitness for teaching." The School District appeals claiming, under the proper scope of review, the circuit court should have affirmed the board's decision, as the record contained substantial evidence to support that decision. We agree.

S.C. Code Ann. § 59-25-430 (1976) of the Teacher Employment and Dismissal Act provides, in pertinent part, as follows:

> Any teacher may be dismissed at any time who shall fail, or who may be incompetent, to give instruction in accordance with the directions of the superintendent, or who shall otherwise manifest an evident unfitness for teaching; *provided*, however, that notice and an opportunity shall be afforded for a hearing prior to any dismissal. Evident unfitness for teaching is manifested by conduct such as, but not limited to, the following: persistent neglect of duty, willful violation of rules and regulations of district board of trustees, drunkenness, conviction of a violation of the law of this State or the United States, gross immorality, dishonesty, illegal use, sale or possession of drugs or narcotics.

The scope of review that applies to cases brought under the Teacher Employment and Dismissal Act is limited to whether the grounds given for termination of employment are supported by substantial evidence. *Laws v. Richland County School District No. 1*, 270 S.C. 492, 243 S.E. (2d) 192 (1978). Substantial evidence is not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole would allow reasonable minds to reach the conclusion the administrative agency must have reached in order to justify its

action. *Id.* 243 S.E. (2d) at 193.

Turning to the present case, we find there is substantial evidence to support the board's decision to dismiss Hendrickson based on the slapping incident and her inability to maintain control in her class. The following evidence supports this finding.

Judy Watson, the principal at the elementary school where Hendrickson taught, testified Hendrickson was hired to teach between five and seven students around the ages of eleven and twelve who had learning disabilities. The number of students she had was very small for this type of class yet Hendrickson had a management problem as far as discipline was concerned. Watson recounted numerous incidents where students in the class were unruly or involved in altercations with each other. She stated the majority of these incidents should have been handled by Hendrickson in her classroom, but Hendrickson continuously involved Watson in resolving the matters. Hendrickson was advised she needed to take care of some discipline problems herself but, as of the thirteenth school day, Watson had been involved approximately thirteen or fourteen times. In an effort to assist Hendrickson with the problem, two district psychologists were sent in to observe her class and make recommendations. The children's former teacher was also brought in to help Hendrickson set up a management system. Watson noticed no significant changes as a result of these efforts.

On September 13, following a meeting with administrators over the continuing problem, Watson received another note from Hendrickson regarding a problem in her class. As she was speaking to one of the administrators at the district office over the phone, she heard loud noises emanating from Hendrickson's classroom and went to investigate. Hendrickson told Watson one of the children, Billy, was uncontrollable. When Watson asked him what happened, Billy stated, "That bitch slapped me." Hendrickson then responded, "Yes, I did slap him. He wouldn't do as I had asked."

Maris Steinberg, one of the district psychologists, observed Hendrickson's class and found "inadequate measures" had been taken in the area of discipline. Steinberg took over the class for her and was able to obtain order, however, when Steinberg later returned, she found Hendrickson was not em-

ploying the disciplinary steps Steinberg had suggested. Steinberg stated that it was always inappropriate for a teacher to slap a handicapped child and the result of such would be loss of respect for the teacher's authority.

Dr. Marvin Woodson, the school district's superintendent, testified, based on his educational background and experience, that the problems that occurred with Hendrickson indicated there had been no management plan established with the students and, if there had been such a plan, the students had no understanding of it. He further stated, under the circumstances, he felt Hendrickson had lost control of her class, if in fact she ever had control, that there is no circumstance that would justify a teacher slapping a student, and slapping a child indicates a total loss of self-control. Finally, he stated "the slapping was the culmination of a series of events that had led to a deterioration of the situation to the point that I felt like the teacher needed to be removed from the classroom."

■  In *Adams v. Clarendon County School District No. 2*, 270 S.C. 266, 241 S.E. (2d) 897 (1978), our Supreme Court stated:

> A school board has long had the power to discharge teachers "when good and sufficient reasons for so doing present themselves," S.C. Code § 59-19-90(2) (1976). The Employment and Dismissal Act was not so much intended to limit this power as it was intended to prevent its abuse.

While it has been noted that allegations of incompetence or evident unfitness for teaching are broad terms and ones that should be closely scrutinized when offered as a ground for teacher dismissal,[1] in the present case there is ample evidence to support the decision of the school board based on Hendrickson's general inability to control her class and on the specific incident of slapping one of her handicapped students. Further, as stated in *Laws* 243 S.E. (2d) at 193, in view of the powers, functions, and discretion which must necessarily be vested in educational authorities if they are to execute the duties imposed upon them, the court can not substitute its judgment for that of these authorities. After a thorough reading of the

[1] *Adams* 241 S.E. (2d) at 901.

record we are convinced there is substantial evidence, or evidence which would allow reasonable minds to reach the conclusion the school board reached, justifying the termination of Hendrickson. We therefore reverse the order of the circuit court.

Reversed.

BELL and CURETON, JJ., concur.