499 S.E.2d 216

**Judy HALL, Respondent,**

v.

**THE BOARD OF TRUSTEES OF SUMTER COUNTY SCHOOL DISTRICT NO. 2, Appellant.**

No. 2811.

Court of Appeals of South Carolina.

Submitted Oct. 8, 1997.

Decided March 16, 1998.

Rehearing Denied April 23, 1998.

Andrea E. White, of Childs & Halligan, Columbia, for appellant.

J. Cabot Seth, of Jones, Seth & Shuler, Sumter, for respondent.

HEARN, Judge:

The Board of Trustees of Sumter County School District Number 2 appeals the circuit court's reversal of the Board's decision to terminate the employment of Judy Hall. The Board argues substantial evidence supports its findings with respect to Hall's unfitness for teaching and insubordination. We disagree and affirm the circuit court's decision to reinstate Hall's employment.[1]

## FACTS

Respondent Judy Hall served as a media specialist for Furman High School in Sumter County for fifteen years. In 1996, Margaree Simon, another Furman High teacher, asked Hall to chaperone the senior class trip to Disney World. Hall initially declined the invitation. Later, when another teacher could not go, Hall agreed to travel with the class, basing her decision on an agreement with Simon that she would serve as a chaperone only while traveling to and from Florida and during a visit to a shopping mall. She would be "off duty" at all other times. Once in Florida, Hall stayed with a friend in a different hotel. Hall returned with the class to Sumter at the end of the trip.

Prior to the trip, Furman High School's principal, Renee Mathews, approved Hall's designation as a chaperone.[2] She did not, however, learn of Hall's agreement with Simon until after the class returned. When she questioned Hall about her decision to stay apart from the students, Hall acknowledged that she stayed in a separate hotel with her friend, but that Simon—the trip's lead organizer—approved the arrangement. It is conceded there is no written policy for chaperoning off-campus events or trips.

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. The school district's policy states that principals are responsible for ensuring that each field trip has an adequate number of chaperones. At the high school level, one chaperone is required for every fifteen students. In this case, eight chaperones supervised approximately forty students, giving the group nearly three times the number of chaperones it required.

Mathews reported her findings to Dr. Frank Baker, superintendent of Furman's school district. On May 6, Dr. Baker met with Hall and placed her on administrative leave. Baker admonished Hall not to discuss the matter with any other employees pending closure of his investigation. Hall later met with Baker again and admitted discussing the matter with three employees, including Simon. On May 16, Baker recommended that the Board terminate Hall's employment based on Hall's failure to supervise the class during the trip and Hall's insubordination stemming from her discussion with co-employees.

The Board accepted Baker's recommendation and terminated Hall's employment. Hall filed a petition for judicial review of the Board's decision. The circuit court reversed and the Board appeals from that ruling.

## SCOPE OF REVIEW

Our review of a school board decision terminating a teacher's employment is normally limited to determining whether it is supported by substantial evidence. *Felder v. Charleston County School Dist.*, 327 S.C. 21, 25, 489 S.E.2d 191, 193 (1997). This court may reverse an administrative decision if that decision was "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record" such that the "substantial [rights] of a party have been prejudiced." S.C.Code Ann. § 1–23–380(A)(6)(e) (Supp.1997); *Lark v. Bi-Lo*, 276 S.C. 130, 132–33, 276 S.E.2d 304, 305 (1981). Moreover, this court may reverse an administrative decision if substantial rights of the appellant have been prejudiced due to an error of law. S.C.Code Ann. § 1–23–380(A)(6)(d) (Supp. 1997); *Lark*, 276 S.C. at 132–33, 276 S.E.2d at 305.

## DISCUSSION

Local school boards have the power to employ and discharge teachers. S.C.Code Ann. § 59-19-90(2) (1990). Our General Assembly permits the termination of a teacher's employment—without affording a reasonable time for the teacher to rectify the offending behavior—only under certain narrow circumstances. Section 59–25–430 of the Teacher Employment and Dismissal Act provides: "Any teacher may

be dismissed at any time who shall fail, or who may be incompetent, to give instruction in accordance with the directions of the superintendent, or who shall otherwise manifest any evident unfitness for teaching. . . ." S.C.Code Ann. § 59–25–430 (1990). Other deficiencies or shortcomings, however, must be addressed by giving the teacher notice and a reasonable time for improvement. S.C.Code Ann. § 59–25–440 (1990); *Adams v. Clarendon County Sch. Dist. No. 2*, 270 S.C. 266, 273, 241 S.E.2d 897, 900 (1978). Failure to improve within this time constitutes a "good and sufficient" reason warranting the termination of employment. S.C.Code Ann. § 59–19–90(2); *Adams*, 270 S.C. at 272–73, 241 S.E.2d at 900.

In this case, Hall's competence as a teacher has not been challenged. To the contrary, the only evidence shows that her performance for the past fifteen years was satisfactory, the highest rating generally given to teachers. Nor has Hall failed to give instruction in accordance with the superintendent's directions.[3] Therefore, the only basis for terminating Hall without giving her a reasonable opportunity to rectify the offending behavior must involve evident unfitness for teaching.

Section 59–25–430 sets forth a non-exclusive list of examples of unfitness for teaching. Examples include "persistent neglect of duty, willful violation of rules and regulations of [the] district board of trustees, drunkenness, conviction of a violation of the law of this State or the United States, gross immorality, dishonesty, illegal use, sale or possession of drugs or narcotics." *Id.* It is undisputed that Hall's conduct does not fall within any of these specifically delineated categories.

■ The Board argues Hall's failure to supervise and insubordination demonstrate her evident unfitness for teaching, thereby justifying her dismissal without providing her with a reasonable time for improvement. We disagree.[4]

---

**3.** Dr. Frank Baker, the superintendent, testified:

"I have known Ms. Hall . . . since she started to work at Hillcrest, and I really have nothing negative to say about her performance. I have nothing negative to say about her in terms of her support of the District and in terms of her performance as it relates to beyond the classroom with extracurriculars and things of that nature. And in all truthfulness . . . I do not have anything negative to say on that."

**4.** Some of the other chaperones on the trip may well have been subject to termination under this Code section. The record reveals that two

■ Although the Teacher Employment and Dismissal Act contemplates "evident unfitness for teaching" to encompass a broad variety of deficiencies, the Act was also intended to prevent the abuse of a school board's power of termination. *Adams,* 270 S.C. at 272 & n. 6, 241 S.E.2d at 900 & n. 6. Consistent with this requirement, South Carolina's appellate courts have upheld immediate termination only where evidence of unfitness for teaching was "undeniably and abundantly present." *Kizer v. Dorchester County Vocational Educ. Bd. of Trustees,* 287 S.C. 545, 550, 340 S.E.2d 144, 147 (1986). The following cases illustrate the appropriate application of this standard.

In *Kizer,* the South Carolina Supreme Court affirmed a school board's immediate termination where the teacher, among other things, referred to fellow teachers and students as "stupid," obstructed the provision of emergency medical service for a pregnant student suffering a miscarriage, used profanity, and otherwise created a school environment filled with "turmoil, tension, conflict, fear and an absence of trust and respect . . . at war with the interests of society." *Id.* at 550–51, 340 S.E.2d at 147.

More recently, the supreme court extended unfitness for teaching to a teacher's participation in an unauthorized student protest, contrary to the specific directive of the principal that the students return to class. *Felder,* 327 S.C. at 23, 489 S.E.2d at 192. The court found a clear link between the teacher's insubordination, her unfitness for teaching, and her ability to perform her job duties in a professional manner. *Id.* at 25, 489 S.E.2d at 193. The court also affirmed the school board's finding that the teacher made a false statement to her superior. *Id.* at 25–26, 489 S.E.2d at 193.

In *Hendrickson v. Spartanburg County School District Number 5,* this court affirmed a teacher's immediate termination where the teacher slapped a student and could not maintain control of her temper or classroom. 307 S.C. 108,

---

married women teachers were accompanied on the trip by men other than their spouses, without notice to or approval by the school. Hall, however, is unmarried and only met her male friend in Florida after separating from the students. Moreover, her principal must have known that Hall would be meeting him there since his name appeared on the approved list of adults on the trip.

112–13, 413 S.E.2d 871, 873–74 (Ct.App.1992). We also upheld an immediate termination where a principal failed to supervise instruction in accordance with the superintendent's directions. *Barr v. Board of Trustees of Clarendon County Sch. Dist. No. 2*, 319 S.C. 522, 530–31, 462 S.E.2d 316, 320–21 (Ct.App.1995), *cert. denied*, (Apr. 4, 1996). This conduct, the court held, demonstrated a "persistent neglect of duty." *Id.* at 530, 462 S.E.2d at 321.

By contrast, when a teacher's conduct does not demonstrate unfitness for teaching of the type contemplated by the previously cited decisions, procedural safeguards must be followed to allow the teacher reasonable time to correct the problem. This delineation is an important one. As noted in *Johnson v. Spartanburg County School District Number 7*, "[t]here must be a distinction between the cases, or it renders the legislature's intent to create procedural safeguards for educators a nullity." 314 S.C. 340, 343, 444 S.E.2d 501, 503 (1994) (assistant principal demoted without an opportunity to modify offensive behavior and without being given notice that he risked demotion).

## I. Failure to Supervise

The most cogent argument the Board makes is that the students were entrusted to Hall for the duration of the trip and that "common sense" would dictate that she had a duty to supervise them at all times. It also maintains Hall should have reported the agreement concerning her limited chaperone duties to her principal because the arrangement was outside of the norm.

As noted earlier, Hall's presence was not needed because the trip already had more than the required number of chaperones. Moreover, the Board introduced no evidence to contradict Hall's testimony about her agreement with Simon. In addition, the Board admitted no written policy existed which set out the responsibilities of a chaperone. Hall did exactly what she agreed to do: supervise the students on the trip to and from Florida and chaperone them at an Orlando shopping mall. Regardless of what common sense would appear to dictate, the immediate termination of a teacher with fifteen years experience for reasons unrelated to the discharge of her teaching responsibilities cannot be upheld under these

circumstances. Unlike the situations presented in *Felder*, *Kizer*, *Hendrickson*, and *Barr*, Hall's "objectionable" behavior was sanctioned by the trip's lead teacher and was not persistent, abusive, or in flagrant violation of a supervisor's teaching directives.

## II. Insubordination

At common law, insubordination was defined as a wilful or intentional disregard of the lawful and reasonable instructions of an employer. *E.g., Freeman v. King Pontiac Co.*, 236 S.C. 335, 346–47, 114 S.E.2d 478, 483 (1960). Notwithstanding this broad definition, our supreme court has limited its application in the context of teacher employment to cases where insubordination evidences "unfitness to teach, substantially interfere[s] with the performance of [a teacher's] duty, and constitute[s] unprofessional conduct." *Felder*, 327 S.C. at 25, 489 S.E.2d at 193. Other state courts that have upheld termination for insubordination have established a similar connection.[5] We note that the cases relied on by the dissent do not involve teachers.

Without deciding whether Dr. Baker's instructions were reasonable or lawful, it is undisputed that Hall disobeyed his instructions by discussing the situation with three fellow teachers. We find, however, that the Board produced insufficient evidence to show that Hall's alleged insubordination demonstrated evident unfitness for teaching. *See Anonymous v. State Board of Medical Examiners*, 329 S.C. 371, 376–380, 496 S.E.2d 17, 20–21 (1998) (evidence in administrative hear-

---

5. *E.g., Board of Educ. of W. Yuma Sch. Dist. RJ-1 v. Flaming*, 938 P.2d 151, 159 (Colo.1997) (insubordination supported by teacher's disregard for express directions of her superiors concerning use of force in classroom); *Board of Educ. v. Harris*, 218 Ill.App.3d 1017, 161 Ill.Dec. 598, 606, 578 N.E.2d 1244, 1252, *appeal denied*, 142 Ill.2d 651, 164 Ill.Dec. 914, 584 N.E.2d 126 (1991) (continued refusal to accept classroom assignment constituted insubordination); *Childs v. Roane County Bd. of Educ.*, 929 S.W.2d 364, 365–66 (Tenn.Ct.App.), *appeal denied*, (Sept. 9, 1996) (insubordination finding supported where teacher did not control her classroom and maintained questionable grading methods); *Ray v. Minneapolis Bd. of Educ., Special Sch. Dist. No. 1*, 295 Minn. 13, 202 N.W.2d 375, 378 (1972) (insubordination must be "constant and continuing"); *Merchant v. Board of Trustees of Pearl Mun. Separate Sch. Dist.*, 492 So.2d 959, 962–63 (Miss.1986) (insubordination supported by finding of repeated violations of school financial policies).

ing must substantially support conclusion of alleged misconduct); *Kizer*, 287 S.C. at 550, 340 S.E.2d at 147 (evidence of unfitness for teaching must be "undeniably and abundantly" present).

We recognize that section 59–25–430 defines "unfitness for teaching" in a non-exclusive manner. Nevertheless, the type of conduct referred to in the statute—persistent neglect of duty, wilful violation of rules and regulations, drunkenness, conviction of a crime, gross immorality, dishonesty, illegal use, sale or possession of drugs—clearly exceed Hall's acknowledged failure to comply with Dr. Baker's general admonition "not to have any discussion with other employees."

■ Although Dr. Baker testified he issued his directive because "the matter was under investigation," there is no evidence that Hall's insubordination affected her primary duties as a media specialist. Moreover, the record does not contain any evidence showing she attempted to undermine the investigation. In fact, one of the three conversations used to justify her termination occurred when a fellow teacher unassociated with the senior trip heard Hall was upset and called to check on her.[6] Dr. Baker did not know whether Hall initiated these conversations or their substance. While we recognize that a single act of disobedience could, under some circumstances, be sufficient to justify a teacher's termination even though it was unrelated to that teacher's classroom performance, the scant evidence introduced here is insufficient to show Hall's unfitness for teaching within the meaning 59–25–430.

The decision of the circuit court judge is therefore

**AFFIRMED.**

STILWELL, J., concurs.

HOWELL, C.J., dissents in a separate opinion.

---

6. Judge King found Hall's conversations did not impede the superintendent's investigation, but we do not necessarily agree that lack of prejudice would excuse clear acts of insubordination.

HOWELL, Chief Judge, dissenting:

I respectfully dissent. The majority concludes that Hall's insubordination cannot constitute "an evident unfitness for teaching" as contemplated by S.C.Code Ann. § 59–25–430 (1990), thereby causing the Board's decision to be controlled by an error of law. The majority, however, overlooks the evidence before the Board concerning Hall's gross unprofessional conduct and insubordination. I believe that Hall's insubordination, standing alone, constituted "an evident unfitness for teaching" and, given our scope of review, would reverse the trial court.

The General Assembly specifically empowered local school boards to "[e]mploy and discharge teachers." S.C.Code Ann. § 59–19–90(2) (1990). Section 59–25–430 states that teachers may be dismissed at any time for "an evident unfitness for teaching." In addition, section 59–25–430 provides a non-exclusive list of examples of unfitness for teaching, which, as the majority notes, includes: "persistent neglect of duty, willful violation of rules and regulations of district board of trustees, drunkenness, conviction of a violation of the law of this State or the United States, gross immorality, dishonesty, illegal use, sale or possession of drugs or narcotics."

I agree with the majority that insubordination fits within the statutory framework of section 59–25–430. *See Felder v. Charleston County Sch. Dist.,* 327 S.C. 21, 489 S.E.2d 191 (1997). Our common law reflects the general public policy that insubordination should not go unpunished. The supreme court defined insubordination as "a wilful or intentional disregard of the lawful and reasonable instructions of the employer." *Porter v. Pepsi–Cola Bottling Co.,* 247 S.C. 370, 374, 147 S.E.2d 620, 622 (1966). In *Porter v. Pepsi–Cola Bottling Company,* the court explored the policy behind permitting a termination of an employment contract for insubordination, stating:

> Among the fundamental duties of the employees is the obligation to yield obedience to all reasonable rules, orders, and instructions of the employer, and wilful or intentional disobedience thereof, as a general rule, justifies a rescission of the contract of service and the peremptory dismissal of the employee, whether the disobedience consists in a disre-

gard of the express provisions of the contract, general rules or instructions, or particular commands. This rule is not restricted to employees in subordinate positions, but applies to those employed in executive or supervisory capacities, although with respect to the latter it is recognized that they are not bound to such strict adherence to directions as is one whose employment involves the exercise of less degree of responsibility and discretion. The fact that an employee holds a position of authority over others, involving the exercise of executory and supervisory powers, does not relieve him from the duty of obedience to orders of the superiors.

*Id.* at 375, 147 S.E.2d at 622. The supreme court revisited the insubordination issue again in *Young v. McKelvey,* 286 S.C. 119, 333 S.E.2d 566 (1985), where Justice Ness, in a concurring opinion, added, "In all employment contracts, the employee has an obligation to obey all reasonable rules, orders and instructions of his employer. As a general rule, willful disobedience will justify a recission of the employment contract and peremptory dismissal of the employee." *Id.* at 124, 333 S.E.2d at 568 (citing *Freeman v. King Pontiac Company,* 236 S.C. 335, 114 S.E.2d 478 (1960)). Accordingly, insubordination can constitute such an egregious offense against the employer that it can be an evident unfitness for teaching. Each case must be judged by how material the insubordination was to the overall duties and responsibilities of the teacher.

I believe that the majority erroneously concludes that "the Board produced insufficient evidence that Hall's alleged insubordination demonstrated evident unfitness for teaching." [1] While some instances of insubordination by a teacher may not affect fitness, this case is not one of them. According to the principal's May 3, 1996, report, the principal first instructed Hall not to discuss the events of the field trip with other staff members because of other teachers' attempts to mislead her concerning the facts of the field trip. Given the principal's desire to uncover the truth about a situation that ultimately could have led to the termination of not only Hall but other teachers on the field trip, the principal's instructions were

---

**1.** Obviously, a teacher's function encompasses more than that of an instructor and a judgment on fitness to teach should be based on much more than just classroom performance.

eminently reasonable. After receiving the principal's report, which conveyed the principal's concerns that there was a concerted effort by some of the teachers to deceive her, the superintendent also ordered Hall not to discuss the case with other members of the staff. Likewise, the superintendent was acting reasonably by addressing the concerns of the parents and to protect the integrity of the school district. Hall's insubordination revolved around the grave subject of the unprofessional conduct of a number of teachers. The result of Hall's decision to discuss the events of the field trip with other members of the staff was that she impeded the fact-finding mission of both her principal and her superintendent by forever tainting the results of their investigation. Thus, I think that the majority incorrectly ruled as a matter of law that Hall's insubordination was not actionable as an evident unfitness for teaching under section 59–25–430.[2]

Whether Hall's insubordination was material enough to affect her fitness as a teacher was a determination that the school board was particularly qualified to make. After hearing the evidence, the Board decided that Hall's insubordination was egregious enough to warrant dismissal under section 59–25–430. We must affirm the Board's decision if it is supported by substantial evidence. *Kizer v. Dorchester County Vocational Educ. Bd. of Trustees,* 287 S.C. 545, 548, 340 S.E.2d 144, 146 (1986) (" 'Substantial evidence' is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the Board reached or must have reached in order to justify its action."). I believe that the majority opinion amounts to an improper substitution of their interpretation of the facts. In my view, there is substantial evidence to support the Board's decision.

---

2. Any assertion by the majority that the Board should have proceeded under S.C.Code Ann. § 59–25–440 (1990) is misplaced. Section 59–25–440 requires the supervisor to first admonish a teacher for conduct which could lead to dismissal and then allow a reasonable time for improvement. Notice and a reasonable time for improvement cannot cure the damage cause by Hall's insubordination. The damage caused by Hall's insubordination was complete at the time of her insubordination. Assuming that Hall does not repeat her insubordination, section 59–25–440 would leave the board without recourse to punish Hall for her insubordination.

I, therefore, would reverse the trial court and reinstate the Board's decision to terminate Hall under section 59–25–430.