796 S.E.2d 55

**Laura TONEY, Respondent,**

**v.**

**LEE COUNTY SCHOOL DISTRICT, Appellant.**

**Appellate Case No. 2015-000558**
**Opinion No. 5466**

Court of Appeals of South Carolina.

Heard November 17, 2016
Filed February 1, 2017
Rehearing Denied March 23, 2017

---

**5.** We decide this case without oral argument pursuant to Rule 215, SCACR.

Charles Boykin, Shawn David Eubanks, and Deidre D. Laws, all of Boykin Davis & Smiley, LLC, of Columbia, for Appellant.

W. Allen Nickles, III and Susan M. Fittipaldi, both of Nickles Law Firm, LLC, of Columbia, for Respondent.

LOCKEMY, C.J.:

The Lee County School District Board of Trustees (the Board) appeals the circuit court's reversal of its decision to terminate the employment of teacher Laura Toney. We affirm.

**FACTS/PROCEDURAL BACKGROUND**

Laura Toney was employed as a social studies teacher at Lee Central High School (the School) in the Lee County School District (the District).[1] On September 27, 2013, Toney attended a social studies departmental meeting at the School along with five other teachers, including Teacher B. During the meeting, Toney commented to Teacher B that she knew he could relate to her sadness over losing her husband because Teacher B had also recently lost a spouse. Several days after the meeting, Teacher B filed a grievance alleging Toney revealed private information regarding his sexual orientation to his coworkers during the September 27 meeting. Teacher B asserted Toney's sharing of private details of his life was an

---

1. Toney was employed by the District for twenty-three years.

attack on his character and could have resulted in him losing his job and his positive relationships with his coworkers and students.

Upon receipt of the grievance, the School's principal—Ron Webb—and another School administrator—Bernard McDaniel—met with Toney to advise her of the grievance. Webb informed Toney he would handle the grievance upon his return from a conference and instructed Toney not to pursue the matter until his return. Several days later, Toney contends she found a packet left in her classroom containing copies of Facebook posts written by Teacher B.[2] Toney reported her receipt of the packet to McDaniel, and he refused to discuss it with her. McDaniel subsequently told Toney that if she had something to tell him regarding the matter, she should put it in writing. Toney then gave McDaniel a copy of the Facebook posts. Toney also left a sealed envelope containing a copy of the posts at the office of the District's Superintendent, Dr. Wanda Andrews. According to Toney, she provided a copy to the Superintendent because she was concerned a child might be in danger.

Upon Webb's return to the School, he learned Toney had taken the Facebook posts to the Superintendent. Thereafter, the Superintendent met with Webb, McDaniel, and Toney at the School. According to the Superintendent, Toney was uncooperative during the meeting and did not give direct answers to any of the questions she was asked.

In an October 4, 2013 letter, the District notified Toney she was being placed on administrative leave with pay while the District investigated an incident in which she "violated district policy by creating a disruption to [her] assigned school by sharing personal information on another staff member to other staff and students at [the School]." The letter instructed

---

2. The contents of the packet were later proffered under seal at an evidentiary hearing before the Board and inspected *in camera.* The postings included negative comments about Toney and an exchange with an individual identified as a student at Sumter High School containing sexual implications. The posts also contained references to Teacher B's sexual orientation and a photo of his deceased spouse. According to Teacher B, the posts were his, were not set to "private," and were accessible by his Facebook friends including fellow teachers and at least one student.

Toney not to "visit any Lee County facility, utilize any school equipment to communicate (including access to computers or email), [or] . . . contact fellow employees of the [District]."

During her investigation, the Superintendent reviewed Toney's personnel file and discussed Toney's employment record with Webb. The Superintendent's investigation revealed other instances of misconduct including challenging administrators, becoming irate with a parent, failing to follow School protocol, insubordination, and other unprofessional conduct. The Superintendent also learned that while on leave, Toney contacted a Board member to discuss her concerns regarding the substitute teacher assigned to teach her classes.

On December 18, 2013, the Superintendent notified Toney of her intent to recommend the termination of Toney's 2013-14 employment contract to the Board. The recommendation was based on Toney's conduct with regard to discussing another faculty member's personal information with other employees and her failure to adhere to the directives of an administrator. The Superintendent's recommendation was further based upon a review of Toney's personnel file, which revealed she had engaged in other incidents of unprofessional conduct. The notice stated Toney displayed "unacceptable behavior" and "lack of candor" during the investigation into her conduct.

The Board held hearings on April 28, June 7, and July 1, 8, and 29, 2014. In her testimony, Toney denied the allegation she caused a disruption by sharing personal information about Teacher B. According to Toney, she only repeated information she learned from another School employee that Teacher B had lost his spouse. Toney testified she was not aware Teacher B's spouse was a man. On July 29, 2014, the Board voted to accept the Superintendent's recommendation to terminate Toney's employment. Thereafter, on August 8, 2014, the Board issued its written decision. The Board found Toney had engaged in a pattern of unprofessional conduct evidenced by repeated resistance to following the directives of supervisors and administrators. Toney subsequently appealed the Board's decision to the circuit court.[3]

---

3. The Board's decision to terminate Toney's employment was not based on the comments Toney made to Teacher B at the September 2013 departmental meeting; rather, its decision was based, in part, on

Following a hearing, the circuit court reversed the Board's decision and ordered the reinstatement of Toney's employment contract with back pay and benefits. The court held (1) delivering the packet of Facebook posts to the Superintendent, even if inconsistent with the principal's directive, did not reflect upon Toney's fitness to teach; (2) Toney's communication with a Board member did not support termination; and (3) the record did not support the Board's finding that Toney had a pattern of unprofessional conduct amounting to evident unfitness to teach. The circuit court subsequently denied the Board's motion to reconsider. This appeal followed.

## LAW/ANALYSIS

### I. Standard of Review

The Board argues the circuit court erred in failing to apply the proper standard of review.

Citing *Kizer v. Dorchester County Vocational Education Board of Trustees*, 287 S.C. 545, 550, 340 S.E.2d 144, 147 (1986), the circuit court held "[w]here, as here, the challenged action arises from immediate termination, the record must contain evidence of unfitness to teach that is 'undeniably and abundantly present.'" The circuit court also cited this court's holding in *Barr v. Board of Trustees of Clarendon County School District Number 2*, 319 S.C. 522, 526, 462 S.E.2d 316, 318 (Ct. App. 1995), that the authority of the courts to review school board decisions is limited to determining whether the decision to terminate employment is supported by substantial evidence.

Although the circuit court quoted the "undeniably and abundantly present" language in its order, it appears the court made its decision using the substantial evidence standard of review. The court found the "record [did] not establish substantial evidence of Ms. Toney's unfitness to teach or failure to improve performance to a satisfactory level following written notice, assistance and reasonable opportunity."

■ On appeal, the Board contends the proper standard of review regarding the propriety of a teacher's termination is the substantial evidence test. We agree. *See Kizer*, 287 S.C. at

Toney's response to the directives she was given by School administrators following the grievance filed by Teacher B.

550, 340 S.E.2d at 147; *Barr*, 319 S.C. at 526, 462 S.E.2d at 318; *Felder v. Charleston Cty. Sch. Dist.*, 327 S.C. 21, 25, 489 S.E.2d 191, 193 (1997); *Hall v. Bd. of Trs. of Sumter Cty. Sch. Dist. No. 2*, 330 S.C. 402, 405, 499 S.E.2d 216, 218 (Ct. App. 1998); *Barrett v. Charleston Cty. Sch. Dist.*, 348 S.C. 426, 431, 559 S.E.2d 365, 368 (Ct. App. 2001).

■ In her brief, Toney cites *Kizer* and *Hall* to support her position that proof of conduct must be undeniably and abundantly present. Toney misapprehends these cases. As explained by this court in *Barrett*,

> [i]n *Kizer*, the [s]upreme [c]ourt was merely typifying the evidence as undeniably and abundantly present, not articulating a new standard: "Therefore, the officially enunciated public policy of this State is to provide for immediate removal of those whose conduct manifests evident unfitness. Such conduct is undeniably and abundantly present in this case." [287 S.C.] at 550, 340 S.E.2d at 147. Earlier in the *Kizer* opinion, however, the [c]ourt stated that the substantial evidence test was the proper test. *Id.* at 548, 340 S.E.2d at 146. Although the *Hall* case references the "undeniably and abundantly present" language in *Kizer*, a reading of the entire *Hall* opinion makes clear that the court is not declaring a new standard of review but is applying the substantial evidence test.

348 S.C. at 432, 559 S.E.2d at 368. Therefore, this court is limited to examining the record to determine whether substantial evidence supported the Board's decision to terminate Toney's employment. "The court cannot substitute its judgment for that of the school board." *Felder*, 327 S.C. at 25, 489 S.E.2d at 193. " 'Substantial evidence' is not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached or must have reached in order to justify its action." *Laws v. Richland Cty. Sch. Dist. No. 1*, 270 S.C. 492, 495–96, 243 S.E.2d 192, 193 (1978).

## II. Unprofessional Conduct Findings

The Board argues the circuit court erred in holding the Board's findings of unprofessional conduct based upon (1) Toney's delivery of Facebook posts to a School administrator

and the Superintendent; (2) her communication with a Board member; and (3) her pattern of conduct, did not support termination.

Toney is a contract teacher. As such, the rules regarding her termination fall under the South Carolina Teacher Employment and Dismissal Act, sections 59–25–410 to –530 of the South Carolina Code (2004 & Supp. 2016) (the Act). The Act provides for certain situations in which a school board can immediately terminate a teacher:

> Any teacher may be dismissed at any time who ... manifest[s] an evident unfitness for teaching.... Evident unfitness for teaching is manifested by conduct such as, but not limited to, the following: persistent neglect of duty, willful violation of rules and regulations of district board of trustees, drunkenness, conviction of a violation of the law of this State or the United States, gross immorality, dishonesty, illegal use, sale or possession of drugs or narcotics.

S.C. Code Ann. § 59–25–430 (2004).

## A. Failure to Follow Directives

Citing *Hall*, the circuit court found Toney's delivery of the packet of Facebook posts to McDaniel and the Superintendent, even if inconsistent with Webb's directive to "leave the matter alone" until his return to the School, did not reflect on Toney's fitness to teach.

In *Hall*, the school board terminated Hall's employment as a media specialist due to her failure to supervise a class trip and her insubordination stemming from her discussion of the matter with coworkers. 330 S.C. at 405, 499 S.E.2d at 217–18. Hall had agreed with another teacher, unbeknownst to the principal, that she would chaperone a trip to Florida only while traveling to and from Florida and during a shopping mall visit. *Id.* at 404, 499 S.E.2d at 217. She would be "off duty" at all other times. *Id.* When the administration learned of the arrangement, the superintendent placed Hall on administrative leave and told her not to discuss the matter with any other employees. *Id.* at 405, 499 S.E.2d at 217. Hall subsequently discussed the matter with three employees. *Id.* The board terminated Hall's employment, and the circuit court reversed the board's decision. *Id.* at 405, 499 S.E.2d at 218. In

affirming the circuit court, this court held "the [b]oard produced insufficient evidence to show that Hall's alleged insubordination demonstrated evident unfitness for teaching." *Id.* at 409, 499 S.E.2d at 220. The court found the record did not contain any evidence that Hall's insubordination in not following the superintendent's directive affected her primary duties as a media specialist. *Id.* at 410, 499 S.E.2d at 220. The court also held the record did not contain any evidence showing Hall attempted to undermine the investigation. *Id.* One of the three conversations used to justify her termination occurred when a fellow teacher unassociated with the trip heard Hall was upset and called to check on her. *Id.* In addition, the superintendent did not know whether Hall initiated these conversations or their substance. *Id.* The court noted that "[w]hile we recognize that a single act of disobedience could, under some circumstances, be sufficient to justify a teacher's termination even though it was unrelated to that teacher's classroom performance, the scant evidence introduced here is insufficient to show Hall's unfitness for teaching within the meaning [of section] 59–25–430." *Id.*

In the present case, the Board contends its decision to terminate Toney's employment was supported by substantial evidence. The Board asserts that by delivering the packet of Facebook posts to the Superintendent, Toney failed to follow Webb's directive to not discuss the matter. The Board also argues this case is distinguishable from *Hall* because here, unlike in *Hall*, the Superintendent, Webb, and McDaniel all testified Toney did not follow orders and initiated conversations in direct violation of Webb's directive. In addition, the Board notes the record includes other examples of Toney's history of unprofessional conduct.

"At common law, insubordination was defined as a wilful or intentional disregard of the lawful and reasonable instructions of an employer." *Id.* at 409, 499 S.E.2d at 220. "Notwithstanding this broad definition, our supreme court has limited its application in the context of teacher employment to cases where insubordination evidences 'unfitness to teach, substantially interfere[s] with the performance of [a teacher's] duty, and constitute[s] unprofessional conduct.'" *Id.* (alterations by court) (quoting *Felder*, 327 S.C. at 25, 489 S.E.2d at 193).

■ Although Toney disobeyed Webb's directive by discussing her situation with others, we find the Board failed to produce sufficient evidence showing Toney's alleged insubordination demonstrated evident unfitness to teach. Section 59–25–430 defines "unfitness for teaching" in a nonexclusive manner. Nevertheless, the types of conduct referred to in the statute—persistent neglect of duty, wilful violation of rules and regulations, drunkenness, conviction of a crime, gross immorality, dishonesty, and illegal use, sale, or possession of drugs—exceed Toney's failure to comply with Webb's directive to not discuss the matter until his return to the School. The record does not contain substantial evidence Toney's insubordination affected her primary duties as a teacher. Accordingly, we affirm the circuit court as to this issue.

## B. Communication with a Board Member

The circuit court found Toney did not violate any of the directives in the District's letter regarding Toney's contact with other District employees when she contacted a Board member about the qualifications of her substitute teacher. The circuit court further held "any directive prohibiting Ms. Toney from communicating with a Board member on a matter of public concern unrelated to her personal circumstances would violate freedoms protected by the state and federal constitutions."

On appeal, the Board argues the District's letter to Toney was not the only evidence of the directives given to her regarding contact with other employees. The Board asserts the Superintendent advised Toney during a meeting that "[Toney] did not need to talk with anyone" and if "she had any questions, she could call [her]." According to the Superintendent, Toney "left [the meeting] with a good understanding that she was not going to have this communication with anyone."

Toney testified she contacted a Board member after receiving a complaint from one of her students regarding the substitute. Toney admitted she did not follow the Superintendent's directive to contact her with any questions because she "didn't feel comfortable" taking her concerns to the Superintendent because their initial conference was "not a pleasant

one." Toney further testified she would not have contacted a Board member if the letter had stated she was not permitted to speak with any member of the Board.

■ We find the record does not contain substantial evidence to support the Board's decision to terminate Toney's employment based upon her communication with a Board member. Notably, the District's letter did not prohibit Toney from contacting a Board member. Furthermore, her contact with the Board was not related to the reasons for her administrative leave.[4] Substantial evidence does not indicate Toney willfully disregarded a directive in contacting a Board member. *See Hall*, 330 S.C. at 409, 499 S.E.2d at 220 ("At common law, insubordination was defined as a wilful or intentional disregard of the lawful and reasonable instructions of an employer."). Moreover, we find Toney's contact with the Board member did not amount to insubordination evidencing an unfitness to teach. *See id.* ("Notwithstanding this broad definition, our supreme court has limited its application in the context of teacher employment to cases where insubordination evidences 'unfitness to teach, substantially interfere[s] with the performance of [a teacher's] duty, and constitute[s] unprofessional conduct.' "). Accordingly, we affirm the circuit court as to this issue.

## C. Pattern of Conduct

The circuit court determined the record did not support the Board's finding that Toney engaged in a pattern of unprofessional conduct that demonstrated her unfitness to teach. The court found Toney had never been reprimanded by Webb for unprofessional conduct and Webb testified he had no reason to recommend Toney's termination prior to her removal from the School. The court further noted Toney's teaching contract was renewed every year without any conditions.

---

4. The Board contends the circuit court erred in holding Toney's communication with a Board member was a matter of public concern. The Board maintains Toney's communication was directly related to her personal circumstances. We disagree. The record contains no indication Toney discussed her administrative leave with any member of the Board.

The Board asserts the following incidents demonstrated Toney's pattern of unprofessional conduct and failure to follow directives:

(1) In a January 2006 letter, Toney's former principal, Lenora Scott, advised Toney that her inappropriate behavior could lead to termination. The letter described an incident in which Toney questioned an assistant principal, became angry, and was not receptive to her requests. Scott noted she found evidence of Toney's poor classroom management, inappropriate use of instructional time, and inappropriate questioning of students. Scott also stated Toney's behavior and attitude during a conference with Scott was argumentative, unprofessional, and unacceptable.

(2) In a March 2012 email, a former assistant principal reminded Toney that instructional materials were to be picked up during Toney's planning period. Webb testified Toney had previously sent students during class time to pick up materials and he addressed the matter with Toney.

(3) In a February 2013 letter, Webb wrote to Toney, "[y]ou are receiving this letter as a reminder to make sure you always conduct yourself in a professional manner." Webb testified the letter was sent because Toney became irate with a parent during a parent teacher conference and was acting unprofessionally.

(4) On May 7, 2013, Webb wrote to Toney regarding her failure to enter fourth quarter grades.

(5) In September 2013, Toney was again advised not to send students to collect supplies during class time.

(6) In a September 2013 email, Kara Fowler, a member of the School's administrative team, provided feedback to Toney regarding Fowler's classroom observation of Toney's teaching. Toney responded via email the next day. Webb testified Toney's reaction to the observation was negative, defensive, and not supportive of the instructional process.

(7) Toney was cited in September 2013 for failing to attend a mandatory faculty meeting.

 We find the record does not contain substantial evidence to support the Board's decision to terminate Toney's employment based upon a pattern of unprofessional conduct. As noted by Toney, Webb testified that prior to Toney's placement on administrative leave in October 2013, he had no reason to recommended Toney's employment be terminated. In addition, we note that while the record contains some evidence of unprofessional conduct, Toney was continually offered a contract to teach through the 2013-14 school year. Furthermore, Toney's personnel file only included the 2006 incident described above and none of the other documents listed above were placed in her file or considered as grounds for disciplinary action. We find the incidents cited above by the Board do not reveal a pattern of conduct demonstrating Toney's unfitness for teaching within the meaning of section 59–25–430.

## CONCLUSION

We affirm the circuit court's reversal of the Board's decision because the record does not contain substantial evidence to support the Board's decision to terminate Toney's employment contract for the 2013-14 school year under section 59–25–430.

**AFFIRMED.**

KONDUROS and MCDONALD, JJ., concur.